Lawrence D. Rosenberg
(*pro hac vice application to be filed*)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001.2113
Telephone: +1.202.879.3939
Facsimile:  +1.202.626.1700
ldrosenberg@jonesday.com

Christine E. Cheung (Cal. Bar No. 335629)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA  90071.2452
Telephone: +1.213.489.3939
Facsimile:  +1.213.243.2539
cecheung@jonesday.com

Attorneys for Petitioner
Lufthansa Technik AG

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of the Application of LUFTHANSA TECHNIK AG, Petitioner, for an Order Pursuant to 28 U.S.C. § 1782 to Take Discovery, Pursuant to the Federal Rules of Civil Procedure, of Respondent Thales Avionics, Inc., for Use in Foreign Proceedings | Case No. APPLICATION FOR DISCOVERY IN AID OF FOREIGN LITIGATION PURSUANT TO 28 U.S.C. § 1782 ORAL ARGUMENT REQUESTED |

Petitioner Lufthansa Technik AG ("Lufthansa") makes this application for an order pursuant to 28 U.S.C. § 1782 authorizing its attorneys to issue subpoenas pursuant to Federal Rule of Civil Procedure 45 upon Thales Avionics, Inc. ("Thales") to produce documents and to provide testimony pursuant to Federal Rule of Civil Procedure 30, for use in currently pending patent infringement proceedings in Germany and the United Kingdom.  In the proceedings, Lufthansa demonstrated that Astronics Advanced Electronic Systems ("AES") infringed Lufthansa's

European Patent No. EP 881 145 B1 ("EP' 145 Patent) by selling 110V in-seat power systems, called "EmPower," for installation in commercial aircraft.  Part of the patent infringement includes AES's sales of its system for incorporation in Thales's in-flight entertainment ("IFE") units that Thales sells to airlines worldwide.  The German and UK actions remain pending for Lufthansa to submit evidence and accountings for damages based on sales by AES and its customers.

This is Lufthansa's second action under 28 U.S.C. § 1782 to obtain discovery from Thales in connection with these foreign proceedings against AES.  In the first action (Case No. 8:19-mc-00016-UA-KES) ("First § 1782 Action"), Thales had produced contracts between Thales and AES and also spreadsheets regarding purchases and sales of parts AES had supplied to Thales ("AES Components").  This present action pertains to new information Thales disclosed in a letter to AES in June 2022, which AES later produced to Lufthansa as required by the court in the German action.  The letter indicates that Thales supplied components to its downstream customers that were incorporated with AES Components, resulting in an infringing system referred to as an "In-Seat-Power-System."  These Thales Components and their integration with AES Components to create the In-Seat-Power-System are relevant to Lufthansa's accounting for damages, and so Lufthansa is now seeking additional data from Thales to be used in the German and UK actions.

## JURISDICTION

1.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as it arises under federal law, specifically 28 U.S.C. § 1782.  *See United Co. Rusal PLC v. Trafigura A.G.*, No. 3:11mc17 (SRU), 2011 WL 1045532 (D. Conn. Mar. 16, 2011).

## BACKGROUND REGARDING FOREIGN PROCEEDINGS

### A.     THE PENDING GERMAN ACTIONS

2.     On December 29, 2010, Lufthansa initiated an action in a district court

in Mannheim, Germany (the "Mannheim Court") against Astronics Advanced Electronic Systems ("AES") for infringement of Lufthansa's European Patent No. EP 881 145, validated in Germany as DE 598 10 238. (Jaekel Decl. ¶ 22.)

3. By that civil action, Lufthansa sought an injunction to stop further harm from AES's infringement and to obtain damages for AES's past infringement. (*Id*.)

4. On February 6, 2015, the Mannheim Court held that AES had infringed the EP 145 Patent through direct shipments of In-Seat-Power-Systems to Germany. (*Id.* ¶ 22.) On November 14, 2016, the Karlsruhe Higher Regional Court of Germany affirmed this decision. (*Id.*) In March 2019, the German Federal Supreme Court dismissed AES's appeal by holding that Lufthansa is entitled to ask for any and all damages incurred by AES's infringement through direct shipments of In-Seat-Power-Systems to Germany as far back as December 26, 2003. On July 26, 2017, Lufthansa filed an action for its damages on the basis of AES's accounting. The Mannheim District Court granted Lufthansa damages on December 6, 2019. Lufthansa enforced the judgement against AES. That judgment is on appeal before the Karlsruhe Court of Appeals (*Id.* ¶¶ 26–27).

5. On December 29, 2017, Lufthansa filed another action against AES claiming damages because AES infringed Lufthansa's patent by supplying infringing systems to customers outside of Germany, like Thales, while knowing that these systems would eventually be sold by AES's downstream customers in Germany (indirect shipments). In a December 6, 2019 judgment, the Mannheim District Court granted Lufthansa's claims for damages and accounting concerning AES's indirect shipments and AES's contributory infringement by supplying parts of its system to directly and indirectly to Germany. In addition, the court granted Lufthansa's request for an affirmation because the court suspected AES's German accounting to be incorrect and incomplete. In its appeal, AES asserted that it has no knowledge that its customers and further downstream customers would (i) supply

its parts to Germany or (ii) combine the parts as an infringing system in Germany. (*Id.* ¶¶ 32–34).  Lufthansa relies on claims for damages based on joint liability because AES collaborated with its downstream customers to commit patent infringement in Germany. This includes damages claims against AES for collaborating with Thales, such as by participating in system planning coordination meetings with customers, the aircraft manufactures and seat vendors to plan the installation and configuration of the infringing system in Germany (*Id.* ¶ 36).

6.     In an appeal by AES of an order issuing the maximum fine allowable under German law for a second time, the Karlsruhe Court of Appeals confirmed that "If an entire system is the subject-matter, then, in addition to the parts mentioned in the patent claim, all other components indispensable for the proper functioning as well as all further elements belonging to the product put on the market are to be included" (*Id.* ¶ 37).

7.     Because Lufthansa previously had been unaware that Thales Components are integrated with AES Components, Lufthansa sought discovery only regarding damages for infringing sales resulting from the supply of AES Components in actions under 28 U.S.C. § 1782, against AES in the Western District of Washington (Case No. 2:17-cv-1453-JCC), and against Thales in the First § 1782 Action.  Now that Thales disclosed in its June 1, 2022 letter that Thales Components are part of the infringing system or sold with an infringing In-Seat-Power-Supply-System, Lufthansa understands that these Thales Components are also subject to Lufthansa's damages in Germany (*Id.* ¶ 38).

## B.     PENDING ACTIONS IN THE UNITED KINGDOM AND FRANCE

8.     In December 2017, Lufthansa filed a patent infringement action in the Patents Court in England against AES for infringement of EP (UK) 0 881 145. On July 22, 2020, the Patents Court found that Lufthansa's patent was valid and had been infringed by AES, and also by two other defendants, Panasonic Avionics

Corporation ("Panasonic") and Safran Seats GB Limited ("Safran," an AES customer). The appeal by AES, Panasonic, and Safran was dismissed on January 14, 2022. The Court ordered there to be an inquiry into the damages suffered by Lufthansa, or at Lufthansa's election, an account of the profits made by AES, Panasonic and Safran through their infringement of the patent, and further ordered AES, Panasonic, and Safran to pay to Lufthansa the sums found due under the inquiry/account. (*Id.* ¶¶ 54–56).

9. On September 2, 2022, Lufthansa elected to receive an account of AES's, Panasonics' and Safran's profits and served Points of Claim to progress the account of profits. As part of its Points of Claim, Lufthansa stated that it will claim profits realized "on the sale of the MCU, AMCU, EMCU Outlet Units, In-Seat power supplies (including seat power modules and seat power boxes), In-use indicators, all associated cables, and all other parts sold along with the EmPower Systems (including installation KITs, Configuration Modules, termination plugs, brackets and adapters)." As in Germany, Lufthansa's claims therefore include all parts of the infringing system as well as all other parts sold along with the system (*Id.* ¶ 57).

10. The French proceedings for infringement of claims 1, 2, 3, and 7 of the French designation of EP 0 881 145 were initiated by Lufthansa Technik against AES and Panasonic on December 29, 2017 and against Thales (jointly with AES) on June 18, 2018. Both proceedings were consolidated. On December 4, 2020, the Tribunal Judiciaire de Paris (i.e. the French court having jurisdiction for patent matters) ruled that claims 1, 2, 3, and 7 of Lufthansa's French counterpart patent was invalid. On December 8, 2022, the Cour d'appel de Paris, i.e. the appellate court of Paris, heard an appeal of the ruling and a decision is expected to be issued on February 24, 2023. If the French court of appeal rules for Lufthansa and holds the patent valid, the procedure will resume on the issue of infringement and remedies, including damages (*Id.* ¶¶ 59–63).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FACTUAL BACKGROUND**

**A.     LUFTHANSA AND THE EP 145 PATENT**

11.     Lufthansa is one of the leading manufacturers and independent providers of maintenance, repair, overhaul, and modification services in the civil aviation industry.  (Jaekel Decl. ¶ 2.)  With tailored maintenance programs and state-of-the-art repair methods, Lufthansa ensures the unbroken reliability and availability of its customers' fleets.  (*Id.*)  Lufthansa is an international organization involved in maintenance, production, and development.  (*Id.*)

12.     Lufthansa's EP 145 Patent, titled "Electrical Power Supply Device," was issued on November 26, 2003.  (*Id.* ¶ 4.)  The patent claims technology that enables a standard household voltage supply to be provided safely in the cabin of an aircraft to supply electricity to allow passengers to use their laptops or electronic entertainment devices in flight.  (*Id.*)  Before the patented invention, aviation authorities took the view that placing a plug socket in the armrest of a passenger seat, for example, posed a safety risk because a passenger might inadvertently insert conductive material into the socket and receive an electric shock.  (*Id.*)  The risk was particularly acute for young travelers, who might insert a sharp object into the plug socket.  (*Id.*)

13.     The technology in the patent incorporates safety features to prevent the possibility of electrical shock.  (*Id.* ¶ 5.)  Specifically, the patented technology ensures that power is only supplied to a plug socket only if both pins are inserted into the socket simultaneously.  (*Id.*)  Only when two pins are detected in the socket within a predetermined maximum time (such as 300 milliseconds) will the power supply switch the power on.  (*Id.*)  Thus, if a child, for example, inserted a needle into one side of the plug socket, the power would not be switched on.  (*Id.*)  Even if a child inserted a second needle into the second pole, no power would be switched on, because the two pins would not be detected within the predetermined maximum time.  (*Id.*)

**B.    THALES**

14.    Thales is a Delaware corporation, headquartered in Virginia, that has a corporate office in Irvine, California, from which it has been known to ship infringing units to Germany (Jaekel Decl. ¶ 80.).

15.    Thales is a subsidiary of Thales USA Inc., which is, in turn, the principal North American subsidiary of Thales Group.  Among other things, Thales designs, engineers, sells, and installs in-flight entertainment and communications solutions to airlines worldwide for both commercial and private aircraft. (*Id.* ¶ 81.)

16.    AES sells its AES Components to Thales, among other aircraft-component companies that Thales then supplies to its downstream customers. Many of these AES Components are constructed pursuant to specifications from Airbus, Boeing, and other original equipment manufacturers ("OEMs"), for installation on those manufacturers' aircraft in Europe. (*Id.* ¶ 82.)

17.    Many or most of these AES Components are delivered to Thales's facility in Irvine, California.  And, as noted previously, Thales has been known to ship these AES Components from this facility to Germany and the UK. Accordingly, the documentation Lufthansa is seeking should be located at the Irvine, California, facility or otherwise in the custody and control of Thales and its employees in that facility. (*Id.* ¶ 83.)

**SECTION 1782'S STATUTORY REQUIREMENTS HAVE BEEN MET**

18.    28 U.S.C. § 1782 authorizes this Court to order any person in the Central District of California to give testimony and produce documents for use in a foreign proceeding upon the application of any person with an interest in that proceeding.  Specifically, Section 1782(a) provides, in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation.  The order may be made . . . upon the application of any interested person and . . . [t]o the extent

that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

19. To obtain discovery in aid of a foreign litigation, a petitioner must show: (a) that the person to provide discovery resides or is found in the district where the application is made; (b) that the information sought is "for use in a proceeding in a foreign or international tribunal"; and (c) that the petitioner is an "interested person" in the foreign proceeding. 28 U.S.C. § 1782(a); *see also Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246 (2004). Lufthansa's application satisfies each of these requirements.

20. *First*, Thales resides in or can be found in this District. Thales maintains a corporate office in Irvine, California, where many key business functions relating its in-flight entertainment systems are handled. (Jaekel Decl. ¶¶ 80–83.) On information and belief, the documents that Lufthansa seeks are either located in Irvine, California, or within this Respondent's possession, custody, or control, as those terms are defined in Federal Rule of Civil Procedure 34.

21. *Second*, the information sought is highly relevant to, and will be used to assist Lufthansa in the pending German Action and in similar actions in France and the United Kingdom. Specifically, the requested information pertains to sales of an infringing system and components sold with that infringing system, which are both relevant for calculating damages. As such actions constitute proceedings in foreign tribunals, the second requirement is met. *See Intel*, 542 U.S. at 258.

22. *Third*, this application is made by an "interested person." 28 U.S.C. § 1782(a). Lufthansa is the plaintiff in the Pending European proceedings. (*See* Jaekel Decl. ¶¶ 1–2.) Parties to foreign litigation are "interested persons." *See Intel*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782[.]"); *Akebia Therapeutics, Inc. v. FibroGen, Inc.*, 793 F.3d 1108, 1110-11 (9th Cir.

2015) (holding that a party to the foreign proceedings has the requisite "reasonable interest" necessary for judicial assistance pursuant to Section 1782).

**THE COURT SHOULD EXERCISE ITS DISCRETION AND PERMIT LUFTHANSA TO OBTAIN THE REQUESTED DISCOVERY**

23.    Upon finding that the three statutory factors are satisfied, the district court should determine, in its discretion, whether to order the requested discovery. *See Intel*, 542 U.S. at 264.

24.    In *Intel*, the Supreme Court declined to adopt inflexible rules for determining when or to what extent discovery is permissible under Section 1782. Instead, the Court "suggested" factors that the district court could consider in resolving that question.  *See Intel*, 542 U.S. at 247 ("Whether such assistance is appropriate in this case is a question yet unresolved.  To guide the District Court on remand, we suggest considerations relevant to the disposition of that question.").

25.    The four factors suggested by the Supreme Court for consideration are: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding" such that the "foreign tribunal has jurisdiction over [it]"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the requests are "unduly intrusive or burdensome," and, if so, whether those requests can be "trimmed." *Intel*, 542 U.S. at 264-65; *see also United States v. Global Fishing, Inc.*, 634 F.3d 557, 563 (9th Cir. 2011) ("*Global Fishing*").

26.    In addition to these suggested factors, the Court should also consider the overarching principles of Section 1782.  "Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal court assistance in gathering evidence for use in foreign tribunals." *Intel*, 542 U.S. at

247.  While this legislation has undergone many amendments, these amendments have steadily and consistently moved the legislation in the singular direction of providing more, not less, discovery for use in more, not fewer, judicial and quasi-judicial forums in connection with more, not fewer, types of proceedings. *See id.* at 248-49.  Indeed, the Seventh Circuit has explained that "a party to litigation in a foreign country can seek discovery relating to that litigation in a federal district court, and, in the discretion of that court, can obtain as much discovery as it could if the lawsuit had been brought in that court rather than abroad." *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 594 (7th Cir. 2011) ("*Biomet*") (internal citations omitted).

27.    Section 1782 has two aims:  to provide "efficient assistance to participants in international litigation" in our federal courts and to "encourag[e] foreign countries by example to provide similar assistance to our courts.  *Intel*, 542 U.S. at 252; *see also Akebia*, 793 F.3d at 1110; *Global Fishing*, 634 F.3d at 563; *Malev Hungarian Airlines v. United Techs. Int'l Inc.*, 964 F.2d 97, 100 (2d Cir. 1992); *Marubeni Am. Corp. v. LBA Y.K.*, 335 F. App'x 95, 96 (2d Cir. 2009) (noting that the district court's discretion should be guided by the twin aims of the statute); *Cryolife, Inc. v. Tenaxis Med., Inc.*, No. C08-05124 HRL, 2009 WL 88348, at *3 (N.D. Cal. Jan. 13, 2009) (granting discovery requested for use in German court because it would be consistent with the twin aims of the statute).

28.    To that end, Section 1782 has been described as a "one-way street" that grants wide assistance to others, but demands nothing in return.  *Malev*, 964 F.2d at 101.  "Absent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance."  *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995); *see also London v. Does 1-4*, 279 F. App'x 513, 515 (9th Cir. 2008) (affirming district court decision to permit Section 1782 discovery because the petitioner showed the discovery would be useful to prove its case in the foreign

court).  Indeed, if a court fails to consider this backdrop in analyzing the discretionary Intel factors, it risks abusing its discretion.  *See Malev*, 964 F.2d at 101-02.

29.    Applying these factors and considering the overarching principles behind the statute, this Court should permit Lufthansa to obtain the requested discovery.

## Thales Is Not A Party

30.    The first *Intel* factor considers whether a respondent is a participant in the foreign proceedings because, when a respondent is party, "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad."  *Intel*, 542 U.S. at 264.

31.    Thales is not a participant in the German Action or in the pending proceedings in the United Kingdom.  As the *Intel* Court explained, this fact demonstrates why Lufthansa needs Section 1782 aid.  *Id.*  ("nonparticipants in the foreign proceeding may be outside the foreign tribunal's reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid").  Indeed, a federal court has held that the first *Intel* factor "necessarily favors" the petitioner where the respondent "is not a party to the foreign action."  *Pott*, 945 F. Supp. 2d at 1200.  In addition, Lufthansa will have no opportunity to seek discovery of the information sought by the Application in the pending German action because that jurisdiction does not have a mechanism that Lufthansa may invoke to obtain third-party discovery.  (Jaekel Decl. ¶ 42.)

32.    There is a provision in the German Code on Civil Procedure ("Zivilprozessordung" or "ZPO"), particularly, Section 142, that permits a party to request that the other party or a third party be ordered to present a certain, specifically identified document.  (*Id.* ¶¶ 43–46.)  But Lufthansa cannot use that provision to obtain the discovery it seeks for at least three reasons.  *First*, to invoke Section 142 ZPO, Lufthansa would be required to identify specifically the

document(s) it seeks and justify the request by showing how those specific document(s) would be used to support a claim or defense in the lawsuit; a general request seeking discovery of the internal documents of the other party as evidence for the litigation , no matter how narrowly tailored, would not be sufficient. (*Id.*)  If the information sought is uniquely within the knowledge and possession of the other party, these hurdles simply cannot be overcome. (*Id.*)  *Second*, even if Lufthansa could overcome these hurdles, there is no guarantee that Thales would produce the requested documents in the German Action.  There is no mechanism by which the German court can compel production. (*Id.*)  *Third*, because the documents Lufthansa seeks are located in the United States, they are outside the jurisdictional reach of the German court. (*Id.*)  *See In re Servicio Pan Americano de Proteccion, C.A.*, 354 F. Supp. 2d 269, 274 (S.D.N.Y. 2004) (granting the § 1782 petition because, among other things, "the apparent limitations of Venezuelan discovery rules suggest that the exercise of jurisdiction by this court may be necessary to provide Pan Americano with the documents it seeks.")

33.    Similar hurdles exist in the United Kingdom, however, Lufthansa is not yet in a position to assume or guess the identities of entities that received the infringing systems or parts.  In addition, in both countries, the seizure proceedings will be limited to evidence relevant to proceedings initiated in that country alone.  Finally, seizure proceedings are less efficient and timely than Section 1782 discovery here, especially where, as here, the entities with relevant information are largely unknown.  Any delay could be problematic for Lufthansa, as the statutes of limitations in the United Kingdom permit recovery for acts of infringement that predate the initiation of court proceedings by five and six years, respectively. (*See Id.* ¶ 58.)

34.    Moreover, even if a mechanism did exist under German or other foreign law to obtain such discovery, Section 1782 does *not* require that Lufthansa invoke that mechanism or exhaust all possible alternatives before seeking discovery

in this Court.  *See Intel*, 542 U.S. at 261; *In re O'Keeffe*, 646 F. App'x 263, 268 (3d Cir. 2016) ("We have never held that an applicant must seek discovery relief in the foreign forum first."); *In re Procter & Gamble Co.*, 334 F. Supp. 2d 1112, 1115 (E.D. Wis. 2004) (rejecting as "inefficient and possibly ineffective" the argument that petitioner should have to seek discovery from the foreign tribunal first).

35.     The first *Intel* factor thus weighs in favor of granting Lufthansa's Application.

### The Foreign Courts Will Be Receptive To The Discovery

36.     The second *Intel* factor considers the nature of the foreign tribunal and its receptiveness to the requested discovery.  Absent authoritative proof that a foreign tribunal would reject evidence obtained with the aid of Section 1782, this factor weighs in favor of granting a Section 1782 petition.  *See Minatec Fin. S.A.R.L. v. SI Grp. Inc.*, No. 1:08-CV-269 (LEK/RFT), 2008 WL 3884374, at *6-7 (N.D.N.Y. Aug. 18, 2008) (granting request for discovery upon finding absence of authoritative declarations from Germany's judiciary, executive, or legislature addressing the use of evidence obtained by Section 1782); *Cryolife*, 2009 WL 88348, at *3 (finding no evidence that the German court would be unreceptive to assistance under Section 1782 and granting petition).

37.     German courts generally receive evidence without regard to its origin, how it was obtained, or whether the obtaining was in line with the ZPO, as long as it was not obtained in violation of the basic rights provided in the German constitution.  Lufthansa already introduced materials obtained through § 1782 actions in the German Action and UK Action (Jaekel Decl. ¶¶ 53, 58.)   .

38.     Federal courts examining this factor have routinely granted requests to obtain discovery in the United States for use in proceedings pending in Germany.  *See, e.g.*, *Biomet*, 633 F.3d at 599 (granting request for discovery under Section 1782 for German trade secret case); *Heraeus Kulzer GmbH v. Esschem, Inc.*, 390 F. App'x 88, 93 (3d Cir. 2010) (vacating order quashing subpoena and

1   remanding with instructions to grant discovery on an expedited basis); *Cryolife*,

2   2009 WL 88348, at *4 (noting that under Section 1782, one is not "obliged to

3   establish a 'compelling need' for discovery . . . petitioner need only show that the

4   information will be useful"); *Minatec*, 2008 WL 3884374, at *4 ("[I]t is far better to

5   provide federal court assistance than none at all."); *In re Gemeinschaftspraxis*

6   *Dr. Med. Schottdorf*, No. Civ. M19-88 (BSJ), 2006 WL 3844464, at *7 (S.D.N.Y.

7   Dec. 29, 2006) (concluding that the applicant's attempt to acquire discovery it was

8   unable to obtain in Germany was "not an 'impermissible' use of § 1782 because, in

9   some respects, that is precisely the type of assistance that the statute was designed

10   to afford"); *Procter & Gamble Co.*, 334 F. Supp. 2d at 1115 (granting discovery for

11   use in five foreign proceedings, including one in Germany).

12       39.    And, indeed, evidence obtained pursuant to Section 1782 has been

13   decisive in German proceedings.  *See In re Heraeus Kulzer GmbH*, No. 3:09-CV-

14   530 RLM-MGG, 2017 WL 214322, at *1 (N.D. Ind. Jan. 18, 2017) (noting that the

15   German court "relied on" documents obtained pursuant to Section 1782 in reaching

16   its judgment); *see also In re Heraeus Kulzer GmbH*, No. 3:09-CV-530 RM, 2015

17   WL 5613156, at *1 (N.D. Ind. Sept. 22, 2015) (noting that "the German judgment

18   quotes extensively from the cited documents," all of which were produced pursuant

19   to a Section 1782 petition).

20       40.    The second *Intel* factor thus weighs in favor of granting Lufthansa's

21   Application.

**The Request Does Not Conceal An Attempt
To Circumvent Foreign Proof-Gathering Restrictions**

24       41.    The third *Intel* factor considers whether the foreign jurisdiction has

25   proof-gathering restrictions that might be improperly circumvented if the discovery

26   request is granted.  Germany has no such proof-gathering restrictions.  *See Intel*,

27   542 U.S. at 264-65.  As noted above, German courts generally admit the evidence

28   offered by a party without regard to its origin.  (Jaekel Decl. ¶¶ 47-48, 53.)

42.     Similarly, U.S. courts have authorized Section 1782 discovery assistance for cases brought in the United Kingdom.  *Euromepa*, 51 F.3d at 1102; *In re Bayer AG*, 146 F.3d 188, 196 (3d Cir. 1998), *as amended* (July 23, 1998); *In re Catalyst Managerial Servs., DMCC*, 680 F. App'x 37, 41 (2d Cir. 2017); and *Akebia*, 793 F.3d at 1112-13.

43.     The third *Intel* factor thus weighs in favor of granting Lufthansa's Application.

### The Discovery Requests Are
### Narrowly Tailored To Obtain Relevant Information

44.     The discovery requests in this Application are narrowly tailored to seek information concerning the Thales Components referred to in Thales's June 1, 2022 letter, particularly about how these components factor in a proper calculation of damages for the German and UK proceedings.  Lufthansa was not aware of this information prior to recent discovery of the June 1, 2022 letter.  The information that Lufthansa requests in this Application is therefore not duplicative of discovery requests from the First Section 1782 action or from any other proceeding.

45.     Particularly, by this Application, Lufthansa seeks a parts list of the In-Seat Power-Supply System including the AES Components and incorporated Thales Components, shipment instructions that Thales's customers provide regarding the shipment of parts, documents identifying Thales's sales of Thales Components, and technical coordination minutes and design reviews showing AES's interaction with Thales concerning installations for customers located in Germany and/or the United Kingdom.  The information is necessary for establishing damages for sales of the infringing system made by AES's customers, including Thales, or second level customers (customers of customers) in Germany if AES supplied the system (or components to be assembled as the system), knowing that some of the supplied quantities would end up on the German market.

46.     Lufthansa will thereafter seek deposition testimony on similar topics

1    and those that arise from the responsive documents.

2          47.     While Lufthansa has made every effort to propound narrowly tailored

3    discovery requests, if these requests are deemed to be overly broad, the proper

4    course of action is to modify the subpoena, rather than quashing it outright:

5
6
7
8

> [R]ecently, we have made the point that although American-style discovery for one party may skew foreign litigation, "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright."

9    *Metallgesellschaft AG v. Hodapp*, 121 F.3d 77, 80 (2d Cir. 1997) (quoting

10    *Euromepa*, 51 F.3d at 1101); *see also id.* at 78 ("We agree . . . that the district court

11    abused its discretion in refusing discovery.").

12          48.     Similarly, the Seventh Circuit reversed the lower court's denial of

13    Section 1782 discovery, finding that denying the petitioner's request outright was

14    an abuse of discretion:

15
16
17
18
19
20

> The district court's second error was to turn down [petitioner's] discovery request flat, on the ground that compliance would be unduly burdensome to [respondent], without requiring [respondent] to negotiate with [petitioner] over cutting down the request to eliminate excessive burden and failing that to ask the district court to limit the scope of discovery . . . . If [petitioner is] asking for too much, the district court can and should cut down its request, but not to nothing, as it did. That was unreasonable, and therefore reversible.

21    *Biomet*, 633 F.3d at 597-98. Lufthansa stands ready and willing to cooperate with

22    Thales to try to resolve any concerns that Thales may have about the breadth of its

23    discovery requests. The fourth *Intel* factor thus weighs in favor of granting

24    Lufthansa's Application.

25          49.     Indeed, this Court previously found that, on balance, the four *Intel*

26    factors weighed in favor of granting Lufthnsa's prior application for discovery from

27    Thales. (Dkt. No. 11, Case 8:19-mc-00016, Order Granting § 1782 Application at

28    4.) The result should be the same here.

1

**The Proposed Protective Order Protects Thales's Confidentiality**

2        50.     Even if Thales were to challenge production of the requested

3    documents and testimony by alleging that its own information is highly

4    confidential, such confidentiality concerns should not be an impediment to this

5    Court's granting Lufthansa's Application for at least two reasons.

6        51.     *First*, this Court may enter a Protective Order to ensure that

7    confidential information will be provided only to Lufthansa's counsel who have

8    submitted to this Court's jurisdiction and not to Lufthansa's employees.  The

9    parties already agreed to a Protective Order in the First Section 1782 Action,

10   attached hereto as Attachment 5.  The proposed Protective Order also provides that,

11   before Lufthansa may use a document in the Pending European Proceedings, it

12   must give notice of its intent to Thales's counsel five (5) business days in advance.

13   Thales's counsel will then have an opportunity to challenge that proposed use in

14   this Court if it believes there is an undue risk of disclosure of the confidential

15   information.  Through this procedure, this Court can evaluate the likelihood that

16   disclosure might occur, and balance Lufthansa's need for the information against

17   Thales's confidentiality concerns.  The Ninth Circuit has acknowledged that

18   protective orders of this sort sufficiently "guard against disclosure" of confidential

19   information.  *Akebia*, 793 F.3d at 1112.

20       52.     *Second*, challenges to Lufthansa's proposed use should be rare because

21   the German court files are not publicly accessible and because Germany has

22   mechanisms to protect the confidentiality of evidence presented in their courts.

23   (*See* Jaekel Decl. ¶¶ 49-52.)  Indeed, Lufthansa has previously presented material

24   from discovery in the United States as part of the German proceedings, and AES

25   did not have any problems with the way the German court handled the

26   confidentiality issues.  (*See id.*)  Similar confidentiality protections exist in the

27   United Kingdom.  (*See* ¶ 58.)

28       53.     Thus, Thales's potential confidentiality concerns are no basis for

1    denying this Petition.

2

3                            **CONCLUSION**

4            This Court should exercise its discretion in favor of Lufthansa to effectuate

5    the twin aims of 28 U.S.C. § 1782: (i) providing efficient means of assistance to

6    participants in international litigation in our federal courts; and (ii) encouraging

7    foreign countries by example to provide similar means of assistance to our courts.

8    *See Intel*, 542 U.S. at 252; *Metallgesellschaft*, 121 F.3d at 79.  Lufthansa asks this

9    Court to consider its request promptly to ensure that responsive discovery is

10   obtained in sufficient time to be of use in the Pending European Proceedings, and,

11   after Thales has had an opportunity to voice any objections, to allow discovery

12   relevant to the issues generally identified in this application, including issuing and

13   serving subpoena in the form of Attachment 4 annexed hereto, pursuant to

14   Rules 26, 30, 34, and 45 of the Federal Rules of Civil Procedure.  In particular,

15   Lufthansa requests that the Court (i) set this matter for the earliest available hearing

16   date; and, after providing Thales an opportunity to voice its objections, if any;

17   (ii) enter an order compelling Thales to produce documents; (iii) enter a Protective

18   Order in the form annexed hereto as Attachment 5; and (iv) grant such other and

19   further relief to Lufthansa as may be just and equitable.

20

21

22

23

24

25

26

27

28

1   Dated this 30th day of December, 2022.

2

3                           By: */s/ Christine E. Cheung*

4                              Lawrence D. Rosenberg
                               *(pro hac vice application to be filed)*

5                              JONES DAY
                              51 Louisiana Avenue, N.W.

6                              Washington, D.C.  20001.2113
                              Telephone:     +1.202.879.3939

7                              Facsimile:     +1.202.626.1700
                              ldrosenberg@jonesday.com

8

9                              Christine E. Cheung (Cal. Bar No. 335629)
                              JONES DAY

10                            555 South Flower Street, Fiftieth Floor
                            Los Angeles, CA 90071.2452

11                            Telephone:     +1.213.489.3939
                            Facsimile:     +1.213.243.2539

12                            asmith@jonesday.com

13                      Attorneys for Petitioner
                      LUFTHANSA TECHNIK AG

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of the Application of LUFTHANSA TECHNIK, Petitioner, for an Order Pursuant to 28 U.S.C. § 1782 to Take Discovery, Pursuant to the Federal Rules of Civil Procedure, of Respondent Thales Avionics Corp. for Use in Foreign Proceedings. | DECLARATION OF GERD JAEKEL |

1.　　My name is Gerd Jaekel and I am a partner at Jones Day and am registered and in good standing as an attorney at law with the Munich Bar in Germany. I am principal counsel for Lufthansa in the patent litigation proceedings in Germany against Astronics Advanced Electronics Systems ("AES") and am fully informed about the status of the other parallel proceedings in Europe, notably in the UK and France. Those proceedings are ongoing. I make this declaration in support of Lufthansa's Application for Discovery Pursuant to 28 U.S.C. § 1782 against Thales ("2022 Subpoena"). Unless otherwise stated, I have personal knowledge of all the facts stated herein and if called as a witness would testify consistent with these facts. To the extent relevant, I relied on the definitions from Lufthansa's proposed 2022 subpoena.

2.     By way of background, Lufthansa Technik ("Lufthansa" or "LHT") is one of the leading manufacturers and independent providers of maintenance, repair, overhaul, and modification services in the civil aviation industry. With tailored maintenance programs and state-of-the-art repair methods, Lufthansa ensures the unbroken reliability and availability of its customers' fleets. Lufthansa is an international organization involved in maintenance, production, and development. Until expiry, Lufthansa was the owner of European Patent No. EP 881 145 B1 and its German Publication No. DE 598 10 238 (collectively, "EP'145 Patent"). Lufthansa has obtained final and legally binding judgements awarding damages for infringement against AES in Germany and against AES, Panasonic Avionics Inc. and Safran Seats GB in the UK. Lufthansa is currently pursuing its particular damages both in Germany and the UK that are calculated on the basis of sales made in those countries. According to German case law, Lufthansa's claims against AES are not limited to items that were brought to Germany by or on behalf of AES. Rather, AES is also liable for sales made by its customers or second level customers (customers of customers) in Germany if AES supplied them, knowing that some of the supplied quantities would end up on the German market. Such liability is in parallel to the liability the customers themselves, like Thales (cf para 32 below).

3.     As a consequence of the enforcement of the decision of the German courts, AES was required to contact its customers regarding the deliveries to Germany. Recently, AES forwarded a letter from Thales dated June 1, 2022 to Lufthansa. This letter contained, inter alia, the information that Thales did not only sell AES Components as such, but also sold Thales Components incorporating one or more AES Component. Thus far, Lufthansa was unaware of such incorporation of Thales Components. It is therefore seeking evidence about these Thales

Components and their functional interaction with or within the infringing system in support of its claims against AES and Thales based on the infringement of the German and English parts of the European Patent No. EP 881 145 B1 (German Publication No. DE 598 10 238) (collectively the "EP'145 Patent" or the "German Patent" or "UK Patent"). Lufthansa's requests are tailored to seeking information concerning Thales Components within the In-Seat-Power-Supply-System that were not addressed and disclosed under Lufthansa's prior subpoena directed to Thales in 2019 ("2019 Subpoena" – Case 8:19-mc-00016-UA-KES):

i. **a conclusive list of all part numbers of the In-Seat-Power-System (Request 1)**. Thales revealed in its June 1, 2022 letter to AES that Thales sold "Thales Components that incorporate one or more of the parts listed in" AES's parts list. The 2019 Subpoena only covered AES Components. Therefore, Lufthansa does not have relevant information about these Thales Components and their incorporation with AES Components within in the In-Seat-Power-Supply-Systems. Moreover, the excel spreadsheets Thales provided does not cover the entire damages period, consists only of part numbers without providing technical information to decode the part numbers and determine their relevance to Lufthansa's damages and relies on an incomplete list of AES Components from AES. Lufthansa is entitled to damages under German and UK laws. Such damages extend to parts sold with an infringing system that were directly shipped by AES to Germany or the UK. The same applies to parts being indirectly shipped to Germany by AES's downstream customers, including Thales. Furthermore, the available information about the AES Components, provided as Annex A to the 2022 Subpoena, is

likely incomplete as it does not include Thales Components that Thales sold to its downstream customers with the AES Components. Moreover, it does not include all components AES supplied with the infringing systems. A single missing part number could mean the loss of millions of U.S. dollars in damages because thousands of units of the individual parts are typically sold over the course of the relevant period.

ii. **Information on Thales's sales and Purchases of the In-Seat-Power-Systems (Requests 2 and 3).** Lufthansa has to determine the scope of the infringement to identify the distribution chain and other infringers within that chain and to calculate its damages resulting from the infringement from the shipment of the In-Seat-Power-Supply-Systems and Thales Components.

iii. **Information on how Thales incorporated its components with the AES Components as part of the infringing system (Requests 4 and 5).** Again Lufthansa requires this information to determine the infringement of its patent and to calculate its damages.

iv. **Information on the incorporation of Thales Components into In-Seat-Power-System (Request 6).** Thales explained in a letter to AES dated June 1, 2022 that there are Thales Components that it incorporates with the AES Components. However, it is unclear how these components are incorporated with the AES Components to create the infringing system. Lufthansa has to determine this in order to assess its infringement claims and specify its damages vis-à-vis the Thales Components.

DECLARATION OF GERD JAEKEL - 4

v.   **Information on the assembly of the infringing system (Request 7).**
Lufthansa's patent protects a system comprising of several components. AES contests its liability on the basis of the shipment of individual components that are not yet assembled as a system. Lufthansa therefore requires evidence on the assembly of the individual components as an infringing system to secure its damage claims against the infringers of its patents respectively.

vi.   **Information on AES's and Thales' joint efforts to infringe Lufthansa's patents in Germany and the UK (Request 8).**
Lufthansa is claiming damages from AES based on joint actions with its downstream customers, including Thales, in Germany. AES contests any collaboration despite its active involvement in the planning of individual projects with its downstream customers, seat vendors and aircraft manufacturers. Thus, to establish AES's liability and claim additional damages, Lufthansa has to show that AES deliberately participated in its downstream customer's actions or actions of seat vendors or aircraft manufacturers in the infringement.

### In-Seat-Power-System

4.   The EP'145 Patent, entitled "Electrical Power Supply Device," issued on November 26, 2003. The patent claimed technology that, as I understand it, for the first time enabled a standard household voltage supply to be provided in the cabin of an aircraft to supply electricity to passengers so they can use their laptops or electronic entertainment devices in flight. Before the patented invention, aviation authorities took the view that placing a plug socket in the armrest of a passenger seat, for example, posed a safety risk because there was a risk that the passenger might inadvertently insert conductive material into the socket and

receive an electric shock. The risk was particularly acute for young travelers, who might insert sharp objects into the plug socket.

5.      The technology in the EP'145 Patent incorporates safety features to prevent the possibility of electrical shock. In particular, in accordance with the German part of the EP'145 Patent and in accordance with a dependent claim of the other family members of the EP'145 Patent, the patented technology ensures that power is supplied to a plug socket only if both pins are inserted into the socket at or almost at the same time. In short, only when two pins are detected in the socket within a predetermined maximum time (such as 300 milliseconds) will the power supply switch the power on. Thus, if, for example, a child inserted a needle into only one side of the plug socket, the power would not be switched on. Indeed, even if a child inserted a second needle into the second pole, no power would be switched on, because the two pins would not be detected within the predetermined maximum time.

6.      AES manufactures and sells power supplies for use in the passenger cabin to the airline industry under the trade name "EmPower." The EmPower-System makes use of the German Patent and UK patent. The EmPower system is sold as individual components that can be assembled in an infringing way in many different configurations to fit the needs of the individual aircraft on which the system is eventually installed.

7.      In the German proceedings, as well as in the parallel U.S. proceedings pursuant to 28 U.S.C. § 1782,  AES provided many different iterations of its relevant parts list of AES Components (because Lufthansa identified mistakes based on the technical information AES had provided in the U.S. proceedings) that are supposed to show the components supplied by AES to its customers as

components of its EmPower-System. The part numbers according to AES's last iteration of that parts list is included as Annex A to the 2022 Subpoena.

8.      The volume of part numbers results from the fact that AES offers various versions of its individual components with differences in shape, number of connectors, and maximum rated performance. For example, AES offers In-Seat-Power-Supply units ("ISPS") as well as In Seat Power Modules ("SPM") or In-Seat Power Boxes ("SPB") in various configurations to its customers that power the components connected to this unit, for example outlet units for personal end devices of the passengers or in-use-lights. The ISPS, SPM or SPB are in turn powered by an Master Control Unit ("MCU"), Advanced Master Control Unit ("AMCU") or Enhanced Master Control Unit ("EMCU"), which are connected via a large number of different associated cables and harnesses. For illustration purposes, I include diagrams of different iterations of AES's system below:



Block Diagram – EmPower® IFE Integrated Seat Power System



Block Diagram – EmPower® 110VAC + USB In-Seat Power System

9. Based on Lufthansa's understanding, Thales purchases and sells components from AES in the U.S. that Thales then supplies to its downstream customers on a large scale, including to downstream customers in Germany. On

DECLARATION OF GERD JAEKEL - 8

occasion, Thales also asks AES to directly ship the parts to its customers in the respective countries worldwide.

10.    Within its letter dated June 1, 2022 – which AES later forwarded to Lufthansa–, Thales sent a letter to AES to respond to AES's inquiry regarding Thales's sales of infringing systems to Germany. In that letter, which I attach as **Exhibit A** to my declaration, Thales provided inter alia an Appendix 1 that also lists the shipment of "*Thales Components that incorporate one or more of the parts listed in Annex 1a*" [Annex 1a incorporates AES's parts list that is included as Annex A to the 2022 Subpoena] (letter at p. 1 para. 2; emphasize added):

> "*Accompanying this letter is an Excel spreadsheet, Appendix 1, containing the responsive information using the parts attached as Annex 1a to your February 8 correspondence. Consistent with our understanding of the request, we have included information for those Thales assemblies that incorporate one or more of the AES parts listed on Annex 1a. As a result, the spreadsheet includes two worksheets. The first worksheet, astronics_parts_shipment, lists responsive shipments of parts listed on Annex 1a. The second worksheet, astronics_component_shipment, lists responsive shipments of Thales Components that incorporate one or more of the parts listed on Annex 1a*."

11.    The information Thales provided in its June 1, 2022 letter (Exhibit A) on Thales Components (i) does not cover the entire period that is subject to Lufthansa's damages, (ii) only includes information on part numbers that (iii) cannot be decoded without further information from Thales, (iv) does not explain what Thales defined as incorporation with AES Components, (v) relies on an incomplete parts list from AES and therefore does not list all relevant AES Components or Thales Components from the outset and (vi) does not indicated equivalent part numbers used by Thales vis-à-vis its downstream customers. In detail:

DECLARATION OF GERD JAEKEL - 9

12.    *First*, the production on Thales Components is limited to the years 2015 to 2018 and therefore does not cover the years from 2003 to 2014. These years are most relevant because AES introduced a modified system in 2014 that does not infringe the German Patent, although it infringes the UK Patent.

13.    *Second*, the excel spreadsheet merely identifies the AES Components and Thales Components based on part numbers, e.g. "180949-090611", "180949-090610", "180949-101104", "180894-102" etc. The technical features and configuration options of these numbers are however not disclosed in Thales's excel spreadsheets and therefore remain unknown to Lufthansa. Without the corresponding technical documents or other documentation that explains what part the respective part number stands for and what technical features the respective part possesses, Lufthansa is left guessing whether the respective part is of relevance to the In-Seat-Power-System or how it can be incorporated within the In-Seat-Power-System which is of utmost importance to determine and claim damages. In the same way, it is unknown how these parts are incorporated and function with the AES Components, which is again relevant to claim damages. Again this requires knowledge of the technical features and configurations of these parts that Lufthansa does not have and that the information set forth in Thales's June 1, 2022 letter does not provide.

14.    *Third*, it remains unknown on what basis Thales determined whether a Thales Component is capable of being incorporated into or with the In-Seat-Power-System or AES Components. Thales did not provide any definition in its June 1, 2022 letter about this, and Lufthansa cannot derive that information from the mere indication of part numbers listed on excel spreadsheets that do not disclose the technical features and their possible configurations or incorporation with other components.

15.     *Fourth*, Thales relied on Annex 1a as provided in AES's November 30, 2021 and February 8, 2022 letter. Annex 1a is a list of AES Components that is incomplete and was replaced by AES on August 15, 2022 with Annex 1e in the German proceedings. Annex 1e adds and removes AES Components from the list in Annex 1a. The parts list from Annex 1e is the basis for the part numbers listed in Annex A to the proposed 2022 Subpoena.

16.     *Fifth*, the parts list provided by AES as Annex 1a that is the basis of Thales's June 1, 2022 letter is also incomplete because it does not include all part numbers for all AES Components. For instance USB-outlet units that can be powered in parallel to 110V-AC Outlet Units are not included in AES's parts list and the respective part numbers remain unknown to Lufthansa. I include another diagram of a another configuration of AES's system below where the ISPS powers



both USB and AC outlets as components of a single system:

17.     Another example of missing information is test equipment that AES specifically designed to test the functionality of the infringing system and sold with the AES Components as part of the infringing system. However, because these parts are not listed on Annex 1a, Thales did not produce information about these

parts to Lufthansa and Lufthansa cannot determine its damages on the basis of the available information. These part numbers are also missing on AES's parts list and the extent of this error was previously unknown to Lufthansa.

18.    *Sixth*, AES's customers, like Thales, use equivalent part numbers instead of the AES's part numbers and use these equivalent part numbers when selling the AES Components to its customers. According to Lufthansa's knowledge, Thales operates on the basis of such equivalent part numbers the respective extent of which is however unknown to Lufthansa. The 2022 Subpoena therefore also aims to identify Thales's part numbers that Thales likely used vis-à-vis its own customers in Germany and the UK to identify relevant parts within the respective information.

19.    Lufthansa has to determine whether the Thales Components are in fact a relevant part of the In-Seat-Power-System pursuant to EP'145 to determine its infringement and damages claims. The relevant information about Thales Components is only available at Thales as the Thales Components are supplied and likely also manufactured only by Thales, not by other third parties. If Lufthansa claims damages for components that are in fact not subject to its claims based on EP'145, Lufthansa could be ordered to pay the costs of the proceedings to the respective defendant by a German or UK court. Thus, Lufthansa has to ensure the relevance of each component prior to relying on these parts in court. Based on the information that is available to Lufthansa, a single additional part number can result in additional millions of US dollars in damages because thousands of units are typically sold under the same part number. Thus, each part number is relevant.

20.    In an effort not to involve Thales further, Lufthansa addressed AES in parallel U.S. proceedings and German proceedings by trying to force AES to provide a complete list of all AES Components, on which the Thales information

and selection of Thales Components as well as other information from Panasonic, Airbus, Recaro and ZIM heavily relies. However, AES refused to provide that information and filed a motion for a protective order in the U.S. proceedings on December 7, 2022, and requested the dismissal of Lufthansa's enforcement order in Germany on November 2, 2022 and December 6, 2022 after the German Court ordered AES to compel by ordering the maximum fine against AES for a fourth time in the German proceedings on October 17, 2022 (cf. my explanations on these proceedings below). In light of AES's multiple iterations of the parts list of AES Components, constant refusal to produce accurate information and the fact that only Thales knows about the Thales Components and their incorporation with the AES Components, Lufthansa is all the more dependent on further information from Thales and can no longer spare Thales in this respect.

### A.      Legal Proceedings in Germany

21.    Lufthansa filed actions in Germany against AES regarding the infringement of European Patent EP 0 881 145, granted with effect for the Federal Republic of Germany. There are currently two main actions. One action is for damages attributed to direct shipments to Germany and one is for damages because of contributory infringement and indirect shipments to Germany. This action in the United States under sec. 1782 relates to evidence of sales and parts for establishing damages in both German actions.

22.    *Infringement Liability For Direct Shipments To Germany:* On December 29, 2010, Lufthansa initiated infringement proceedings in the District Court in Mannheim, Germany, to stop AES from infringing Lufthansa's EP'145 Patent. Lufthansa sought an injunction to stop any further harm from AES's infringement and to obtain damages to compensate it for AES's past infringement as of December 26, 2003 as well as accompanying claims for the rending of

accounts. The Mannheim Court and the Karlsruhe Court of Appeal granted Lufthansa's claims to an injunction, damages and accounting in their judgments of February 2, 2015 and November 9, 2016. On April 18, 2018 and March 26, 2019, the German Federal Supreme Court found AES liable to Lufthansa for patent infringement based on AES's direct shipments of an infringing system from the United States to Germany since December 26, 2003.

23.    As a consequence of these judgments, AES first rendered accounts on its direct shipments in 2015. After Lufthansa pointed out inconsistencies in AES's accounting, AES supplemented in 2017 and 2018 with hundreds of thousands of dollars in missing sales. Lufthansa then pointed out more inconsistencies and in March 2021, AES added further missing sales worth several hundred thousand dollars.

24.    *Validity proceedings in Germany*: German patent cases are typically bifurcated so that infringement issues and invalidity issues are decided by different courts. Lufthansa's case was bifurcated in this manner. In particular, on June 17, 2011, AES initiated nullity proceedings challenging the validity of the EP'145 Patent in the Federal Patent Court.

25.    On December 18, 2013, the Federal Patent Court decided mostly in Lufthansa's favor. In particular, it held that a combination of the challenged claims regarding the EP'145 Patent was valid. On November 9, 2016, AES withdrew its appeal at the Federal Supreme Court, so that the decision as to validity became final.

26.    *Damages For Direct Shipments To Germany:* On July 26, 2017, Lufthansa filed an action for its damages on the basis of AES's accounting. The Mannheim District Court granted Lufthansa damages on December 6, 2019 (docket no. 7 O 137/17). Lufthansa enforced the judgement against AES.

27.     That judgment is on appeal before the Karlsruhe Court of Appeals (docket no. 6 U 128/19). In its appeal, AES argues inter alia that Lufthansa has  not provided sufficient evidence to show that the parts AES supplied were assembled as an infringing system and that AES does not have knowledge whether its customers assemble the supplied parts as a system or where such an assembly takes place. AES therefore contests that its actions resulted in any damages, arguing that Lufthansa has to provide evidence that the individual shipments reported in its accounting were actually assembled in infringing ways.

28.     Therefore, the German Court has to rely on sec. 287 of the German Code of Civil Procedure to determine the damages: "If it is disputed between the parties whether a damage has occurred and how much the damage or the interest to be compensated amounts to, the court shall decide on this in its own discretion, taking into account all the circumstances." The discretion of the court depends on the circumstances Lufthansa can present regarding the assembly of the parts. Because AES additionally requests evidence of the assembly of its individual components as an infringing system, Lufthansa has been seeking additional information for all of AES's projects to substantiate Lufthansa's damages claim in the European proceedings.

29.     In its patent infringement action in Germany, Lufthansa is relying on documents that AES produced pursuant to proceedings under 28 U.S.C. § 1782 against AES.

30.     Unlike in the United States, in Germany, a plaintiff may introduce new evidence that it obtained after the oral hearing in the first instance to substantiate its claims. Thus, Lufthansa may introduce before the Karlsruhe Court of Appeals in the appeal proceedings all new information it obtained from this proceeding after the September 13, 2019 hearing before the Mannheim District Court. In fact,

Lufthansa has already done so to substantiate its appeal and disprove several of AES's counter arguments.

31.    *Motion To Compel For Direct Shipments In German Court:* Because AES provided different information on its infringement in Germany in 2015, 2017 and 2021, Lufthansa filed a request for a motion to compel with the Mannheim District Court on October 6, 2021 (docket no. 7 O 289/10 ZV I). That request is still pending.

32.    *AES's Damages Liability For Indirect Shipments, Contributory Infringement and Affirmation in Lieu of an Oath*: On December 29, 2017, Lufthansa filed another action against AES. In that action, Lufthansa claimed damages from AES for the sales of AES's customers to Germany because AES infringed Lufthansa's patent by supplying infringing systems to customers outside of Germany, like Thales, while knowing that these systems would eventually be sold by AES's downstream customers in Germany and thereby infringe Lufthansa's German patent (indirect shipments).

33.    In a December 6, 2019 judgment (docket no. 7 O 1/18), the Mannheim District Court granted Lufthansa's claims for damages and accounting concerning AES's indirect shipments and AES's contributory infringement by supplying parts of its system to directly and indirectly to Germany. In addition, the court granted Lufthansa's request for an affirmation because the court suspected AES's German accounting to be incorrect and incomplete.

34.    In its appeal, AES asserted (docket no. 6 U 129/19) that it has no knowledge that its customers and further downstream customers would (i) supply its parts to Germany or (ii) combine the parts as an infringing system in Germany. In two decisions, the Karlsruhe Court rejected AES's requests to suspend the preliminary enforcement of the December 6, 2019 decision and emphasized that

AES is liable for any and all parts shipped to IFE-manufacturers, including Thales, distributors or intermediaries that were eventually installed at Airbus in Hamburg or the German seat manufacturers, Recaro and ZIM and that AES is obligated to provide an affirmation because of the inconsistencies in AES's accounting.

35.    In these proceedings, Lufthansa is also relying on documents from proceedings pursuant to sec. 28 U.S.C. § 1782.

36.  In its appeal, Lufthansa also relies on claims for damages from AES based on joint liability because AES collaborated with its downstream customers to commit patent infringement in Germany. This includes damages claims against AES for collaborating with Thales, which result from the fact that AES provided line fit support for its customers at Airbus's premises in Hamburg Germany and also participated in system planning coordination meetings with customers, the aircraft manufactures and seat vendors to plan the installation and configuration of the infringing system in Germany. These meetings typically start with an Initial Technical Coordination Meeting ("ITCM") wherein the general parameters of the project are discussed, i.e. what type of power supply will be installed in the seats and how will the seats be assembled. After that the respective parties meet again for a Preliminary Design Review ("PDR") to set relevant parameters for the project on a preliminary basis, e.g. determine the angle of the in-seat-harness or the location of an outlet unit. Following this, a Critical Design Review ("CDR") takes place to define all final parameters for the production. The respective seats are then manufactured by the seat vendors and equipped with AES's system according to these parameters. Finally, the parties meet for a last time before the production begins to do a Frist Article Inspection ("FAI") for a final review of samples seats, e.g. to look at and review a single row of seats manufactured pursuant to the CDR. Since these documents are decisive for setting the contractual and safety

parameters for each system and project, maintaining these protocols is critical for any entity involved, including AES. Furthermore, the required cable lengths to install the system are discussed during these meetings and typically result in cable plans or routing plans for cables. Additionally, the parties to each project exchange delivery or shipment schedules to align the shipment and installation process and provide technical support in case there are installation issues. These documents likely provide conclusive evidence of the extent to which AES collaborated with Thales and vice versa.

37.     *Motion To Compel For Information And Accounting Claims in Germany:* Lufthansa enforced the December 6, 2019 judgment against AES, but after Lufthansa granted several extensions to AES, AES refused to comply with the judgment. The District Court ordered the maximum fine allowable under German law (i.e. 25.000 EUR) against AES in its decision on September 7, 2020. AES's appeal was dismissed by the Karlsruhe Court of Appeals on December 14, 2020 (docket no. 6 W 52/20). After payment of the fine, AES continued to refuse production. The Mannheim District Court granted Lufthansa's request for a second motion to compel on March 8, 2021 and ordered the maximum fee for a second time and the Karlsruhe Court of Appeals dismissed AES's appeal on October 20, 2021 (docket no. 6 W 6/21). In that decision the Karlsruhe Court also confirmed that all parts of the infringing system or sold with the infringing system are subject to the December 6, 2019 judgment:

> "***If an entire system is the subject-matter, then, in addition to the parts mentioned in the patent claim, all other components indispensable for the proper functioning as well as all further elements belonging to the product put on the market are to be included****. It is irrelevant whether the infringer charges his customer for the delivered unit at a total price or broken down into its individual elements (Düsseldorf Court of Appeals, judgement of 15.02.2007 – I-2 U 71/05, Heavy load shelf, marginal no. 32).*"

38.    Thus, AES Components as well as Thales Components that are part of or sold with an infringing In-Seat-Power-Supply-System would be subject to Lufthansa's damages in Germany.

39.    Because AES refused the payment of the court ordered fine, Lufthansa seized AES's German Patents. AES then paid the fine, but continued to ignore what the court had ordered and Lufthansa's deadlines, which resulted in Lufthansa's third request for a motion to compel on November 12, 2021. AES supplemented its accounting several times since then because of inconsistencies that Lufthansa had indicated to the German court. Both parties appealed the decision. Lufthansa has requested compulsory detention of AES's manager because ordering the maximum fine an additional time is no longer feasible to bend AES's will to provide complete information.

40.    *Motion To Compel Regarding Affirmation*: AES also refused to provide the court ordered affirmation regarding the accuracy of its accounting for direct sales and filed yet another motion to compel. After AES ignored two court-ordered dates to provide the required affirmation, the Mannheim Local Court ordered the maximum fine allowable under German law on February 17, 2021 (docket no. 655 M 1449/20). AES's appeal was dismissed on June 2, 2021 (docket no. 1 T 42/21). Again, AES refused to pay the respective fine and Lufthansa had to seize AES's German patents enforcing the court order. Because AES still refused to provide the affirmation, Lufthansa filed a second request for a motion to compel on July 12, 2021. AES then provided new accounting adding shipments worth hundreds of thousands of dollars, which was still insufficient. Lufthansa therefore requested a further order to compel. Those proceedings are still pending.

DECLARATION OF GERD JAEKEL - 19

**Relevance and use of documents in German proceedings**

41.    Civil procedure in the German courts is governed by the German Code on Civil Procedure ("Zivilprozessordung" or "ZPO"). The ZPO does not prohibit the use of evidence obtained in ways other than those provided by German law or even in violation thereof. Indeed, I am aware of several cases where German courts have either accepted or indicated a willingness to accept evidence produced from the United States or other countries. Thus, the Mannheim District Court has relied on several documents obtained through the U.S. discovery proceedings in its judgments against AES.

42.    Nevertheless, while the ZPO does not prohibit the use of evidence obtained by other means, such as through discovery actions in the United States under Section 1782, the ZPO does not provide a formalized means to request and subsequently obtain information from the other party in the German proceeding. There is no mechanism for pre-trial discovery in German civil practice.

43.    Section 142 ZPO merely provides that a party may request that the other party or a third party be ordered to present a certain, specifically identified document. This request, however, not enforceable and the ordered party can refuse the production despite the court order. The court may only weigh the refusal against the refusing party when assessing the facts of the case. An order is also limited to documents the party can specifically identify and is entitled to receive—*e.g.*, documents belonging to the party or documents (invoices, etc.) which would be requested in an action for accounting.

44.    There are no procedural means in a German patent infringement case to seek general discovery of the internal documents of the other party to be used as evidence in litigation. Therefore, if information is uniquely within the knowledge

DECLARATION OF GERD JAEKEL - 20

and possession of the other party in a German proceeding, there is no mechanism to obtain it under German civil procedure rules.

45.   In addition, documents located in the United States are outside the jurisdictional reach of the German courts. While Section 810 BGB (German Civil Code) or Sec. 140c of the German Patent Act provides that parties may have to produce a certain document, these sections are simply not applicable to documents located outside Germany. Similarly, Section 809 BGB, which provides that certain items may be inspected, is applicable only for specifically identified items that are located in Germany.

46.   Finally, if a party or nonparty chooses not to produce documents requested from the German Court pursuant to Section 142 ZPO, the German court may consider the party's noncompliance in rendering its decision. It cannot, however, compel production. Indeed, there is no means for it to do so.

47.   As a general matter, the German legal literature holds that there are no objections against the use of evidence in German civil proceedings that was obtained by United States discovery procedures. (*See* Eschenfelder, RIW 2006, p. 443; Eschenfelder, IPRax 2006, p. 89; Kraayvanger, RIW 2007, p. 177, p. 183).

48.   In general, civil courts admit evidence without regard to its origin, how it was obtained, or whether it was obtained in line with the ZPO. The Higher Regional Court (Oberlandesgericht) Brandenburg ruled that the actual truth is more important than the correct handling of the ZPO (*see* NJW-RR 2001, 1727).

49.   Regarding the protection of the confidentiality of certain documents to be disclosed under the requested discovery and potentially used in the German Action, it is highly unlikely that the documents would be made accessible to anyone other than the court, the parties directly involved in the litigation, and the respective counsel.

DECLARATION OF GERD JAEKEL - 21

50.    Documents submitted to the German court as evidence in civil litigation will become a part of the court file. Court files are not publicly accessible. Under the ZPO, the direct access to the court files is limited to the court and the parties of the litigation. Section 299 ZPO, the provision relating to the access of files, provides that third parties shall be granted the right to inspect the court files by the President of the court only if they are able to demonstrate that they have a legitimate interest. A mere economic or social interest is not sufficient. Rather, the applicant must be able to show that his interest pertains to the matter in suit—*e.g.*, if he needs to evaluate the files to decide whether to join in the litigation. Significantly, it is not sufficient if the applicant merely desires to access the files to facilitate a suit that does not directly relate to the subject matter in the pending suit or for mere curiosity.

51.    If a request to access the court files is filed by a third party, the court will carefully examine the request. Usually, the parties to the litigation will be heard on the request. The court will then balance the interests of the parties and decide whether to permit access. The court also can limit the access of the third party to certain parts of the files. In addition, both parties may request that the public be excluded from the hearing when confidential information is discussed (Section 172 No. 2 the German Courts Constitution Act - "Gerichtsverfassungsgesetz" or "GVG") and that respective content of the court docket shall be excluded from any later file inspection. The access of a third party seeking file inspection can be further restricted by requesting a confidentiality order pursuant to sec. 16 of the Trade Secrets Act which applies respectively pursuant to sec. 145a of the German Patent Act.

52.    Further, because Lufthansa is a party to the Section 1782 proceedings in the United States, it can obligate itself by the terms of a protective order, issued

by the United States court, to refrain from seeking direct access to these records and to limit its access to any allegedly confidential information provided by Thales to outside counsel's and outside experts'/consultants' eyes only.

53.   Lufthansa has previously presented material from discovery in the United States as part of the German proceedings, and AES did not have any problems with the way the German court handled the confidentiality of those materials.

## B.   Legal Proceedings in the UK

54.   In December of 2017, Lufthansa filed a patent infringement action in the Patents Court in England against AES for infringement of EP (UK) 0 881 145.

55.   On July 22, 2020, the Patents Court found that Lufthansa's patent was valid and had been infringed by AES, and also by two other defendants, Panasonic Avionics Corporation ("Panasonic") and Safran Seats GB Limited ("Safran," an AES customer). The appeal by AES, Panasonic, and Safran was dismissed on January 14, 2022. The judgement of July 22, 2020 is therefore now final.

56.   Pursuant to a Court Order of July 22, 2020 accompanying the judgement, the Court ordered there to be an inquiry into the damages suffered by Lufthansa, or at Lufthansa's election, an account of the profits made by AES, Panasonic and Safran through their infringement of the patent, and further ordered AES, Panasonic, and Safran to pay to Lufthansa the sums found due under the inquiry/account.

57.   On September 2, 2022, Lufthansa elected to receive an account of AES', Panasonics' and Safran's profits and served Points of Claim to progress the account of profits. As part of its Points of Claim, Lufthansa stated that it will claim profits realized "*on the sale of the MCU, AMCU, EMCU Outlet Units, In-Seat power supplies (including seat power modules and seat power boxes), In-use*

*indicators, all associated cables, and all other parts sold along with the EmPower Systems (including installation KITs, Configuration Modules, termination plugs, brackets and adapters)*." As in Germany Lufthansa's claims therefore include all parts of the infringing system as well as all other parts sold along with the system.

58.    In the UK proceedings, Lufthansa also relied on information from the 28 U.S.C. § 1782 proceedings. To the extent relevant, I refer to the explanations of my partner Alastair McCulloch dated June 28, 2019 that I attach as Exhibit B to my declaration.

### C.    Legal Proceedings in France

59.    The application does not concern France. At the moment as the French part of Lufthansa's patent has been invalidated by the court of first instance. However, the appeal is ongoing and Lufthansa's claims against Thales and other infringers will re-emerge if the patent is reinstated.

60.    The French proceedings for infringement of claims 1, 2, 3, and 7 of the French designation of EP 0 881 145 have been initiated by Lufthansa Technik against AES and Panasonic, on 29 December 2017 and against Thales (jointly with AES) on 18 June 2018 and both proceedings have been consolidated. In defense, AES, Panasonic and Thales have filed a counterclaim for invalidity of claims 1, 2, 3, and 7 of the French designation of Lufthansa's EP 0 881 145 patent. By decision of 19 June 2020, the Court decided to examine first the counterclaims for patent revocation and, separately, the main claim for patent infringement.

61.    On  December 4, 2020, the Tribunal Judiciaire de Paris (i.e. the French court having jurisdiction for patent matters) ruled that claims 1, 2, 3, and 7 of Lufthansa's French counterpart patent was invalid. Lufthansa Technik lodged an appeal against this decision on 21 December 2020 and reiterated its claims for infringement of claims 1, 2, 3, and 7 of the French designation of EP 0 881 145. By

interim decision of 18 November 2021, the Court of appeal again decided to examine first the claims for patent revocation and, separately, the main claim for patent infringement. As a result, AES and the other defendants have not made any production relevant to French sales or customers.

62.    On December 8, 2022, the Cour d'appel de Paris, i.e. the appellate court of Paris, heard the appeal of the ruling of December 4, 2020, and a decision is expected to be issued on February 24, 2023.

63.    If the French court of appeal rules for Lufthansa and holds the patent valid, the procedure will resume on the issue of infringement and remedies, including damages. The defendants to the French proceedings would then be asked by Lufthansa Technik to adduce updated information regarding, inter alia; their importation and sales to France.

**Relevance of a comprehensive parts list (Request 1)**

64.    A comprehensive parts list of the In-Seat-Power-Supply-System, including all AES Components and incorporated Thales Components is necessary for Lufthansa to determine all parts that were sold with the infringing system and are therefore subject to Lufthansa's damages. In order to claim those damages, Lufthansa has to know which parts were sold with the system. Information on the Thales Components that were incorporated with the AES Components is only available at Thales because these parts are not supplied by AES and AES is therefore likely unaware of these parts and their numbers. As explained above, the available parts list from AES only includes parts supplied by AES. This information is also relevant because AES's parts list does not include all AES components sold with the infringing system, for example Lufthansa knows that part numbers for test equipment and USB-Outlet Units that can be incorporated with the infringing system are missing. What is more, Thales used its own part

numbers instead of AES's parts numbers for its sales to its downstream customers. AES may not be aware of all these equivalent numbers and therefore not have included these numbers on its parts list. The knowledge of all part numbers is however critical in understanding the distribution chain into Germany, the installation of the components as a system and the calculation of damages. AES also requests Lufthansa to specify the parts it deems relevant to its damages claims in the proceedings. In order to do that Lufthansa needs comprehensive knowledge of all part numbers to determine their relevance for the German litigation.

65.    The information Thales provided with its June 1, 2022 letter to AES (Exhibit A) is inconclusive regarding this crucial information. The information is limited to the years 2015 to 2018 and therefore does not cover the period from 2003 to 2014. Furthermore, Lufthansa cannot determine on what basis Thales decided that a Thales Component would be incorporated with an AES Component.

66.    Providing this  information is neither duplicative nor burdensome for Thales. Information on the part numbers and part description are available for instance in Thales's sales system and can be readily extracted. Moreover, Thales certainly maintains other records of its parts as required by the aviation authorities for approval and traceability purposes. It is not duplicative because Lufthansa never addressed and received a list of the Thales Components. The list of AES Components is incomplete and the 2022 Subpoena only concerns parts that have not been listed before.

**Relevance of shipment information for the In-Seat-Power-System (Request 2)**

67.    Lufthansa has limited its request concerning AES Components to shipping information that was not subject to the 2019 Subpoena. In order to determine the scope of the infringement and to identify the distribution chain and

other infringers within that chain and to claim damages resulting from the infringement from the shipment of the In-Seat-Power-Supply-System. The categories of information facilitate the identification of streams of components of the In-Seat-Power-Supply-System from Thales to its customers.

68.    For example, respective shipment instructions are provided by Thales's customers regarding the shipment of parts. At times, the parts are shipped to an intermediate location in another country for certification and export reasons before they are subsequently forwarded by intermediaries to Germany or the UK. Such shipments are equally relevant to both countries. The modification level is relevant because a different modification level indicates technical changes vis-à-vis the previous version of a component that can influence the way the component is incorporated into the system. Thales did not provide this information previously. The batch number provides information about products made in the same manufacturing run and therefore provides information on the manufacturing date. Whether the part is subject to a retrofit or a linefit is relevant because a linefit indicates that the component was used for installation in a new aircraft, whereas a retrofit indicates the installation in an already existing aircraft. Based on the information on the aircraft for which the part was intended, the location of installation can be determined. In case of a linefit the location follows from the aircraft type, i.e. a linefit for an A380 automatically means that the installation eventually took place in Hamburg, Germany, the location of the final assembly line of the A380.

69.    Providing this information is not difficult for Thales as this information should be readily available in Thales's sales system or quality control system as evidenced by Thales's June 1, 2022 letter to AES (Exhibit A). Thales

includes data like batch numbers in this letter so that such information must be readily accessible by Thales.

**Relevance of shipment information for the Thales Components (Request 3)**

70.    Information on Thales's sales of Thales Components is necessary to determine and calculate Lufthansa's damages claims and to establish the infringement within the distribution chain. The information categories are available within Thales's sales or quality control system. As this request is limited to Thales Components that have not been subject of the 2019 at all, the information is not duplicative, either.

**Relevance of purchase information for the In-Seat-Power-System (Request 4)**

71.    Lufthansa requires information on Thales' purchases of In-Seat-Power-Systems that it subsequently sold to Germany or the UK to claim damages and determine the distribution chain into these countries. The request is limited to special categories of information that have not been disclosed under the 2019 Subpoena.

72.    This information is also available within Thales' sales system and can be readily extracted electronically.

**Relevance of purchase information for the Thales Components (Request 5)**

73.    Request 5 only concerns the Thales Components, which have not been subject of the 2019 Subpoena. The information is highly relevant for the same reasons as explained under Request 4.

74.    This information is also available within Thales' sales system and can be readily extracted electronically.

DECLARATION OF GERD JAEKEL - 28

**Relevance of information on the incorporation of Thales Components into In-Seat-Power-System (Request 6)**

75.    This request is also limited to Thales Components and therefore was not addressed by the 2019 Subpoena. Thales explained that it incorporates Thales Components with AES Components in the In-Seat-Power-System which would make these components subject to Lufthansa's damages. However, it is uncertain how and which (cf. Request 1) Thales Components are incorporated with the AES Components, e.g. if Thales supplies a connecting cable with the AES Components to its downstream customers this cable would be subject to Lufthansa's damages. To determine its claims and damages, Lufthansa therefore requires technical information on the incorporation of these components in the In-Seat-Power-System. Without this knowledge, Lufthansa runs the risk to either lose damages potentially worth millions of U.S. dollars or risks to be ordered to pay the costs of the proceedings in Germany or the UK if it wrongfully claims damages for these components. To the extent Lufthansa is not successful, the German and UK courts may order Lufthansa to pay court costs, attorney fees and out of court expenses.

76.    Providing the respective documents should not be burdensome as relevant documents need to be maintained for quality and traceability purposes by Thales for each project.

**Relevance of information regarding the assembly of the components as an infringing system (Request 7)**

77.    As explained above, Lufthansa's patent protects a system comprising several components. AES contests its liability on the basis of the shipment of individual components that are not yet assembled as a system. Lufthansa therefore requires evidence on the assembly of the individual components as an infringing system to secure its damage claims against the infringers of its patents respectively.

The requested documents will provide such evidence. As explained above, the technical coordination meetings typically take place between Thales, AES, Thales' downstream customers and the aircraft manufacturers to discuss, plan and agree the system that will be installed on the respective aircraft. Lufthansa relies on such a document it retrieved from AES in the German proceedings to substantiate the assembly of the individual components as an infringing system and such protocols from Thales are therefore highly relevant to the European litigation. The same applies to delivery and shipment schedules which show the delivery and shipment of the parts needed to create the infringing system. The same applies to so called cable plans. These plans are typically coordinated between Thales and the seat vendors to determine the length of the cables needed to connect the respective other components of the In-Seat-Power-Supply-System. As part of these plans diagrams showing the wiring of the respective system with all of its components are exchanged which provide evidence sufficient to show the assembly of the components as an infringing system.

**Relevance of information regarding collaboration with AES (Request 8)**

78.    As explained above, Lufthansa is claiming damages from AES based on joint actions with its downstream customers, including Thales, in Germany. AES contests any collaboration despite its active involvement in the planning of individual projects with its downstream customers, seat vendors and aircraft manufacturers. Thus, to establish AES's liability and claim additional damages, Lufthansa has to show that AES deliberately participated in its downstream customer's actions or actions of seat vendors or aircraft manufacturers in the infringement.

79.     Providing the respective documents should not be burdensome as relevant documents need to be maintained for quality and traceability purposes by Thales for each project.

**Thales**

80.     Thales is a Delaware corporation, headquartered in Virginia, that has a corporate office in Irvine, California, from which it has been known to ship infringing units to Germany.

81.     Thales is a subsidiary of Thales USA Inc., which is, in turn, the principal North American subsidiary of Thales Group.  Among other things, Thales designs, engineers, sells, and installs in-flight entertainment and communications solutions to airlines worldwide for both commercial and private aircraft.

82.     AES sells its AES Components to Thales, among other aircraft-component companies that Thales then supplies to its downstream customers. Many of these AES Components are constructed pursuant to specifications from Airbus, Boeing, and other original equipment manufacturers ("OEMs"), for installation on those manufacturers' aircraft in Europe.

83.     Many or most of these AES Components are delivered to Thales's facility in Irvine, California.  And, as noted previously, Thales has been known to ship these AES Components from this facility to Germany and the UK. Accordingly, the documentation Lufthansa is seeking, should be located at the Irvine, California, facility or otherwise in the custody and control of Thales and its employees in that facility.

DECLARATION OF GERD JAEKEL - 31

1    I declare under penalty of perjury under the laws of the United States of

2    America that the foregoing is true and correct.

3    Dated: December 30, 2022

4

5

6    _____

7    Gerd Jaekel

# EXHIBIT A

**EVERSHEDS SUTHERLAND**

Eversheds Sutherland (US) LLP
700 Sixth Street, NW, Suite 700
Washington, DC  20001-3980

D: +1 202.220.8348
F: +1 202.637.3593

danielmorris@
eversheds-sutherland.com

June 1, 2022

**Via E-Mail**
Christian Stoll
Hogan Lovells International LLP
Alstertor 21
20095 Hamburg
christian.stoll@hoganlovells.com

**Re:**   **AES Request for Support in German Litigation,**
    **Reference No. 311 cs 145628. 000019, #2128947**

Dear Mr. Stoll:

I write in response to your letters of November 30, 2021 and February 8, 2022, requesting information from Thales Avionics, Inc. ("Thales") about certain parts and assemblies as they relate to Germany.

Accompanying this letter is an Excel spreadsheet, Appendix 1, containing the responsive information using the parts attached as Annex 1a to your February 8 correspondence. Consistent with our understanding of the request, we have included information for those Thales assemblies that incorporate one or more of the AES parts listed on Annex 1a. As a result, the spreadsheet includes two worksheets. The first worksheet, astronics_parts_shipment, lists responsive shipments of parts listed on Annex 1a. The second worksheet, astronics_component_shipment, lists responsive shipments of Thales components that incorporate one or more of the parts listed on Annex 1a.

Please note however that Thales has not provided the identity of the customer to whom the parts were sold to protect the privacy of Thales customers.

The attached spreadsheet contains the information from August 1, 2015 through May 22, 2018.

Thales declines to produce information prior to August 1, 2015 responsive to Annex 1a because of the unreasonable burden such production would require. Thales migrated its database to a new platform in the summer of 2015. As a result, information from before August 1, 2015 would be accessible only on a legacy database platform. As a result of the normal turnover of staff as well as reductions in response to the extraordinary prevailing market conditions, current Thales staff lack sufficient familiarity with the legacy database platform, which I would note includes only information that is seven years old or older at this point. Retrieving the information you seek for before August 1, 2015 would require an unreasonably burdensome diversion of resources into further development of an unneeded competency for current staff or the costly retention of outside consultants as well as the diversion of internal resources to equip those outside consultants with the company and industry knowledge required to complete the task. The request for the earlier information is therefore not practicable.

However, Thales is able to provide a second Excel spreadsheet, Appendix 2, with some of the responsive information. Appendix 2 is a list prepared using the parts list that accompanied your May 21, 2021 letter and was drawn from the legacy database platform. It therefore provides information from before August 1, 2015. This information was later overtaken by the subsequent

Christian Stoll
Hogan Lovells International LLP
June 1, 2022
Page 2

instructions we understand you to have received in the German proceedings. Nonetheless, we attach it here in the event that it is helpful to you and the Court.

We further note that Lufthansa Technik AG ("Lufthansa"), which we understand is your counterparty in the German litigation, compelled Thales to produce substantial information about these parts and the Thales assemblies that incorporate them as they relate to Germany. Providing this information was a substantial burden to Thales, made more so by Lufthansa's initial resistance to specifically identifying the AES parts for which it was seeking information. For the final iteration of that exercise, however, Thales used a list of parts prepared by Lufthansa. Your US counsel, as well as Lufthansa, already have received that information, which included information relating to before August 1, 2015.[1]

Finally, please note that even with customer information removed, this information is highly confidential and includes business competitive information that could damage Thales if shared with Thales competitors or disclosed publicly. As a result, Thales provides this information on the understanding that this information will be disclosed to Lufthansa only upon Lufthansa agreeing to treat the information as subject to the terms of the September 23, 2019 Revised Protective Order [ECF Doc. No. 59] entered by the U.S. District Court for the Central District of California in *In re Lufthansa Technik AG*, case number 8:19-mc-00016, as modified by the May 13, 2021 Stipulation and Order Modifying Protective Order [ECF Doc. No. 127] and that, further, AES will request that the German court take all appropriate steps to prevent its disclosure beyond that required for purposes of the court proceedings.

Sincerely,

*/s/ Daniel Morris*

---

[1] At the time, Thales had the benefit of staff experienced with the legacy database system, which staff have since separated from Thales.

# EXHIBIT B

Lawrence D. Rosenberg
(pro hac vice application to be filed)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Phone: (202) 879-3939
Fax: (202) 626-1700
ldrosenberg@jonesday.com

Alexis Adian Smith (Cal. Bar. No. 274429)
JONES DAY
555 South Flower Street, Fiftieth Floor
Los Angeles, CA 90071
Phone: (213) 489-3939
Fax: (213) 243-2539
asmith@jonesday.com

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of the Application of LUFTHANSA TECHNIK AG, Petitioner, for an Order Pursuant to 28 U.S.C. § 1782 to Take Discovery, Pursuant to the Federal Rules of Civil Procedure, of Respondent Thales Avionics, Inc., for Use in Foreign Proceedings, | Case No. **DECLARATION OF ALASTAIR MCCULLOCH** |

1.  My name is Alastair McCulloch. I am a partner at the law firm Jones Day. I am a solicitor admitted to practice in England and Wales and have focused on patent litigation throughout my career.

2.  Unless otherwise stated, I have personal knowledge of all the facts stated herein and, if called as a witness, would testify consistent with these facts.

3.  I am in charge of Lufthansa Technik's action against Astronics AES in the United Kingdom, and I am fully informed about the status of this proceeding as well as of the other parallel proceedings in Europe, notably in Germany and France. Those proceedings are ongoing.

**DECLARATION OF**
**ALASTAIR MCCULLOUGH**

1      4.    In December of 2017, Lufthansa filed a patent infringement action in

2  the United Kingdom Patents Court against AES. The action has been listed for trial

3  in February 2020.

4      5.    The proposed discovery will allow Lufthansa to identify whether

5  additional claims may be needed in the United Kingdom, whether within the current

6  proceedings or in additional proceedings. There is urgency to this, because, given

7  the relevant statutes of limitations, any delay in identifying such additional claims

8  may prevent the recovery of substantial damages by Lufthansa.

9      6.    There is a limited ability for a potential claimant in the United

10  Kingdom to seek discovery before proceedings start. However such discovery is

11  limited to documents which would be disclosable in those proceedings. It therefore

12  could not be used in relation to documents relevant to claims in other countries.

13  Further, it is limited to documents and there is no possibility to obtain depositions.

14      7.    The statute of limitations in the United Kingdom for patent

15  infringement is six years. Thus, a litigant can recover damages for acts of

16  infringement that predate the initiation of court proceedings by six years.

17      8.    Courts in the United Kingdom routinely protect litigants' confidential

18  information by the use of "Confidentiality Clubs" which require the recipients of

19  confidential information to sign confidentiality undertaking to protect the

20  confidentiality of the information.

21      I declare under penalty of perjury under the laws of the United States of

22  America that the foregoing is true and correct.

23

24  Dated: June 28, 2019

25

26                                  ALASTAIR MCCULLOCH

27

28

**DECLARATION OF**
**ALASTAIR MCCULLOUGH**

# ATTACHMENT 4

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| Lufthansa Technik AG | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | )   Civil Action No. |
| Thales Avionics, Inc. | ) |
| _____ | ) |
| *Defendant* | ) |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS**
**OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To:                          Thales Avionics, Inc.

_____
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attached List.

| Place: | Date and Time: |
|---|---|
| | |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

            *CLERK OF COURT*
                                                    OR

    _____          _____
        *Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
_____ , who issues or requests this subpoena, are:

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____   on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**Exhibit A to Subpoena Directed to Thales**

**Definitions**

"Thales" or "You" shall mean Thales Avionics Inc., located at 58 Discovery, Irvine, CA 92618, and all predecessors, successors in interest, assignees; and all directors, officers, employees, agents, representatives, and/or partners of the aforementioned entity.

"Astronics" or "AES" shall mean Astronics Advanced Electronic Systems, located at 12950 Willows Road, NE, Kirkland, WA  98034, and all predecessors, successors in interest, assignees; and all directors, officers, employees, agents, representatives, and/or partners of the aforementioned entity.

"Document(s)" shall be defined to the fullest extent permitted by Federal Rule Civil Procedure 34 and case law interpreting it.

The words "and," "or" and "and/or" shall be construed conjunctively or disjunctively as is necessary to make the request inclusive rather than exclusive.

"In-Seat Power-System" shall mean systems or parts thereof that incorporate or were offered, imported, owned, sold, or brought into circulation with one or more AES Components.

"AES Components" shall mean power supply systems and all parts thereof that are (a) suitable for providing an alternating current supply with 110V or more, (b) licensed to be used in the passenger cabin of an aircraft, (c) offered, imported, owned, sold, or brought into circulation by AES, and (d) make use of the features claimed by the German and/or UK part of the European Patent 0 881 145, or sold therewith, including master control units, power supplies, such as in-seat power supplies, in-seat power modules or in-seat power boxes, outlet units, in-use lights, cable connections to the in-use light, cladding for sockets, ground wires, configuration modules, cable extensions and termination plugs, seat-to-seat cables and other electronic parts, connections, including all associated cables, and/or spare parts and/or the parts listed in Annex A to this exhibit. This definition expressly includes any modifications, adjustments, or re-designs of any such power system and all parts thereof from the date the system was introduced until May 21, 2018.

"Thales Components" shall mean power supply systems and all parts thereof that are (a) suitable for being used in a system providing an alternating current supply with 110V or more, (b) licensed to be used in the passenger cabin of an aircraft, (c) capable of incorporating or being connected to one or more AES Components, or sold therewith. This definition expressly includes any modifications, adjustments, or re-designs of any such power system and all parts thereof from the date the system was introduced until May 21, 2018.

"Installation" or "installed" shall mean the installation, assembly and/or connection to another component. .

"Shipment" shall mean each sale or shipment, including direct shipments or indirect shipments via intermediaries, of an In-Seat Power-System or part thereof, or parts sold therewith, to a location or aircraft manufacturer or customer or seat vendor in Germany or the UK or intended for the installation on an aircraft finally assembled in Germany or the UK, such as the A 380.

"A380" shall mean the Airbus A380 aircraft that was developed and produced by Airbus.

"German seat vendor" shall mean a seat vendor having a place of business or manufacturing site in Germany, such as Recaro Aircraft Seating GmbH & Co. KG and ZIM Flugsitz GmbH, including its predecessors and successors."UK seat vendor" shall mean a seat vendor having a place of business or manufacturing site in the UK, such as Safran Seats GB and B/E Aerospace (UK) Limited,

## Instructions

Thales is requested to produce Documents in the following categories that are in Thales's possession, custody, or control, in their entirety and without redaction or expurgation. "Possession, custody, or control" shall be construed to the fullest extent provided under Federal Rules of Civil Procedure 34 and 45 and shall include those Documents within the United States that Thales has the ability to demand or to gain access to in the ordinary course of business, including from or through its parent(s) and/or subsidiary/ies.

If any Document is withheld based upon a claim of privilege or other protection, provide for each such Document: (i) the date of the Document, (ii) the names of all authors, (iii) the names of all recipients, (iv) the names of all cc and/or bcc recipients, (v) the type of Document, (vi) a description of the Document (vii) an identification of the privilege or protection claimed and (viii) a brief explanation of the basis of your claim of privilege or other protection.

Documents shall not be withheld on the grounds that they contain highly sensitive or confidential information, but instead shall be designated in accordance with the terms of the protective order entered by the Court.

Requests for documents may be limited as to responsive documents regarding installation in Germany, or documents that are otherwise responsive, from December 26, 2003 to May 22, 2018, and responsive documents regarding the installation in the UK from December 1, 2011 to May 22, 2022, excluding documents Thales has produced to Lufthansa under the subpoena dated July 8, 2019.

## Documents Requested

1.      Documents, including but not limited to parts lists, cross reference documents, sufficient to show the part numbers and part descriptions of the components of the In-Seat Power-System, including equivalent part numbers used by Thales, AES or Thales' customers.

2.      Documents, including but not limited to shipping documents, sufficient to show, for each year since the first shipments and for each shipment, shipment instructions, the modification level, batch number, whether it was a retrofit or a linefit.

3.      Documents, including but not limited to  purchase orders, invoices, shipping documents or offers, sufficient to show, for each year since the first shipments of Thales Components and for each shipment, the order class, the sales code, the sales order line, the customer information, such as the customer number, the name, the city and country code, date added, customer due date, actual shipment date, customer purchase order number, Fac code, part number, part description, quantity of units, unit price, extended price, comp flag, ship-to address, including the ship-to name, city and country code, program number, aircraft type that the part would be installed on, freight carrier, bill of lading, tail number of the aircraft that the parts would be installed on, shipment instructions, the modification level, batch number, whether it was a retrofit or a linefit.

4.      Documents, including but not limited to purchase orders, invoices, shipping documents or offers, sufficient to show, for each year since the first purchases, for each purchase or receipt of an In-Seat Power-System or part thereof that was subsequently sold or shipped according to Request no. 2 by Thales, the modification level and batch number.

5.      Documents, including but not limited to purchase orders, invoices, shipping documents or offers, sufficient to show, for each year since the first purchases, for each purchase or receipt of an In-Seat Power-System or part thereof that was subsequently sold or shipped according to Request no. 3 by Thales, the vendor, including the vendor number, vendor name, vendor invoice number and invoice date, purchase order number, line number, packaging slip number, date received, quantity received, purchase order line unit price, purchase order line extended price or other compensation, disposition reference, part description and part class, the modification level and batch number.

6.      Documents, including but not limited to component maintenance manuals, data sheets, declarations of design and performance, equipment specifications, system description documents, sufficient to show how the components of an In-Seat-Power-System pursuant to Request no. 2 can be incorporated in the In-Seat-Power-System.

7.      Documents, including but not limited to initial technical coordination minutes, preliminary design reviews, critical design reviews, first article inspection minutes and system review documents, schedules, such as delivery schedules, shipment schedules or milestone confirmations, or plans, such as electric system architecture plans, cable plans and cable routing plans, sufficient to show for each In-Seat Power-System or part thereof that was subsequently sold or shipped according to Request no. 2 by Thales the installation of the In-Seat Power-System in Germany or the UK, including the installation by Thales' customers, seat vendors or the aircraft manufacturer, including Thales' line support at Airbus's final assembly line in Hamburg, Germany.

8.      Documents, including but not limited to initial technical coordination minutes, preliminary design reviews, critical design reviews, first article inspection minutes and system review documents, schedules, such as delivery schedules, shipment schedules or milestone

confirmations, plans, such as electric system architecture plans, cable plans and cable routing plans, training materials, such as PowerPoint presentations, or technical documents, such as component maintenance manuals, user manuals or repair manuals, sufficient to show AES's interaction with Thales concerning the installation of the In-Seat-Power-System in Germany and/or the UK and for a customer located in Germany and/or the UK, including AES's line fit support at Airbus's final assembly line in Hamburg, Germany or AES's line support at the seat vendors in Germany or the UK.

\* \* \*

Annex A

Part Number

129986; 131581; 131585; 1067844; 1067845; 1067846; 1068855; 1068856; 1068857; 1174801; 1174802; 1174805; 1174812; 1174813; 1174814; 1191805; 1191806; 1191842; 1191847; 1191848; 1191849; 1191853; 1191854; 1191855; 1191871; 1191885; 1191886; 1191887; 1191892; 1191894; 1191899; 1248802; 1248807; 1248813; 1248868; 1248878; 1248879; 1248880; 1248882; 1248883; 1248884; 1248886; 1248887; 1284805; 1291809; 1295829; 1299801; 1299802; 1299804; 1299811; 1299816; 1299820; 1299821; 1299829; 1299830; 1299831; 1299853; 1299858; 1299859; 1299866; 1299867; 1299868; 1299869; 1299875; 1299876; 1299882; 1299886; 1299890; 1299892; 1301804; 1301805; 1301812; 1301813; 1301814; 1301817; 1301829; 1301842; 1301843; 1301844; 1301865; 1301868; 1301869; 1301875; 1301877; 1315811; 1315821; 1315822; 1315823; 1315824; 1315847; 1315851; 1315854; 1315879; 1315883; 12998026; 1067-1; 1067-2; 1067510-1; 1067511-1; 1067801-; 1067802-; 1067806-1-10; 1067806-1-15; 1067806-1-20; 1067806-1-25; 1067806-1-30; 1067806-1-35; 1067806-1-40; 1067806-1-45; 1067806-1-50; 1067806-1-55; 1067806-1-60; 1067807-; 1067809-; 1067810-; 1067814-1-; 1067814-10-; 1067814-2-; 1067814-22-; 1067814-4-; 1067816-; 1067817-; 1067819-; 1067820-; 1067821-; 1067822-; 1067823-; 1067824-; 1067825-; 1067826-; 1067827-; 1067828-; 1067829-; 1067830-; 1067831-; 1067832-; 1067833-; 1067834-; 1067835-; 1067836-; 1067837-; 1067838-; 1067839-; 1067840-; 1067841-; 1067842-; 1067843-; 1067847-; 1067848-; 1067850-; 1067851-; 1067852-; 1068105-; 1068802-; 1068803-; 1068804-; 1068807-; 1068808-; 1068809-; 1068810-; 1068811-; 1068813-; 1068814-; 1068816-; 1068817-; 1068823-; 1068824-; 1068825-; 1068826-; 1068828-; 1068830-; 1068831-; 1068832-; 1068833-; 1068834-; 1068835-; 1068836-; 1068837-; 1068838-; 1068839-; 1068841-; 1068842-; 1068843-; 1068844-; 1068845-; 1068846-; 1068847-; 1068848-; 1068849-; 1068850-; 1068851-; 1068852-; 1068853-; 1068854-; 1068861-; 1068862-; 1068863-; 1068864-; 1068867-; 1068868-; 1068869-; 1068870-; 1068872-; 1068873-; 1068874-; 1068876-; 1068877-; 1068878-; 1068879-; 1068880-; 1068881-; 1089-3-1B; 1089-6-1B; 1091101-2; 1091101-2-1; 1091101-2-2; 1091101-5-1; 1091101-5-2; 1091101-6-1; 1091101-6-2; 1091101-8; 1091101-8-1; 1091101-8-2; 1091102-2; 1091102-2-1; 1091102-2-2; 1091102-2-3; 1091102-5-1; 1091102-5-2; 1091102-5-3; 1091102-6-1; 1091102-6-2; 1091102-6-3; 1091102-8; 1091102-8-1; 1091102-8-2; 1091102-8-3; 1091-2-1B; 1091-2-3B; 1091-2-7; 1091-2-8; 1091-2-9; 1091-3-1; 1091-4-1; 1091-4-10; 1091-4-2; 1091-4-3; 1091-4-4; 1091-8; 1100-1; 1100-2; 1100712-0001; 1100712-0002; 1100712-0003; 1100712-0005; 1100712-0006; 1100712-0007; 1100712-0008; 1100712-0009; 1100712-0010; 1100712-0011; 1100712-0012; 1100712-0013; 1100712-0015; 1100712-0016; 1100712-0017; 1100713-0001; 1100713-0002; 1100713-0003; 1100713-0005; 1100713-0006; 1100713-0007; 1100713-0008; 1100713-0009; 1100713-0010; 1100713-0011; 1100713-0012; 1100713-0013; 1100713-0015; 1100713-0016; 1100801-; 1100802-; 1100803-; 1100804-; 1100805-; 1100806-; 1100807-; 1100808-; 1100809-; 1100810-; 1100811-; 1121401-2; 1140101-6; 1140102-10; 1140103-10; 1140105-10; 1140106-10; 1140111-6; 1140800-1; 1140801-1; 1140802-1; 1140804-1; 1140805-1; 1140806-1; 1140807-1; 115NT000-101; 115NT000-102; 115NT000-111; 115NT000-113; 115NT000-114; 115NT000-115; 115NT000-116; 115NT000-117; 115NT000-201; 115NT000-202; 115NT000-203; 115NT000-204; 115NT000-211; 115NT000-213; 115NT000-214; 115NT000-215; 115NT000-216; 115NT000-217; 1170-1; 1170801-; 1170802-; 1170803-; 1170804-; 1170805-; 1170807-; 1170808-; 1170809-; 1170810-; 1170811-; 1170812-; 1170813-; 1170814-; 1170815-; 1170816-; 1170817-; 1170818-; 1170819-; 1170820-; 1170821-; 1170822-; 1170823-; 1170824-; 1170825-; 1170826-; 1170827-; 1170828-; 1171-1-; 1171-2-; 1172-1; 1172-2; 1172-3; 1172-4; 1172-5; 1172-6; 1174-1; 1174-2; 1174815-; 1175101-1; 1175102-1; 1175103-1; 1175104-1; 1175105-1; 1175106-1; 1175107-1; 1175108-1; 1175109-1; 1175110-1; 1175801-; 1175802-; 1175803-; 1175804-; 1175805-; 1175806-; 1175807-; 1175809-; 1175810-; 1175811-; 1175812-; 1175813-; 1175814-; 1175815-; 1175816-; 1175817-; 1175820-; 1175821-; 1175822-; 1175823-; 1175824-; 1175825-; 1175826-; 1175827-; 1175828-; 1176-1; 1176305-1; 1176701-001; 1176701-002; 1176701-003; 1176701-004; 1176701-005; 1176701-006; 1176701-007; 1176701-008; 1176701-009; 1176701-010; 1176701-011; 1176701-012; 1176701-013; 1176701-014; 1176701-015; 1176701-016; 1176701-017; 1176701-018; 1176701-019; 1176701-020; 1176701-021; 1176701-022; 1176701-023; 1176701-024; 1176701-025; 1176701-026; 1176701-027; 1176701-028; 1176701-029; 1176701-030; 1176701-031; 1176701-032; 1176701-033; 1176701-034; 1176701-035; 1176701-036; 1176701-037; 1176701-038; 1176701-039; 1176701-040; 1176701-041; 1176701-042; 1176701-043; 1176701-044; 1176701-045; 1176701-046; 1176701-047; 1176701-048; 1176701-049; 1176701-050; 1176701-051; 1176701-052; 1176701-053; 1176701-054; 1176701-055; 1176701-056; 1176701-057; 1176701-058; 1176701-059; 1176701-060; 1176701-061; 1176701-062; 1176701-063; 1176701-064; 1176701-065; 1176701-066; 1176701-067; 1176701-068; 1176701-069; 1176701-070; 1176701-071; 1176701-072; 1176701-073; 1176701-074; 1176701-075; 1176701-076; 1176701-077; 1176701-078; 1176701-079; 1176701-080; 1176701-081; 1176701-082; 1176701-083; 1176701-084; 1176701-085; 1176701-086; 1176701-087; 1176701-088; 1176701-089; 1176701-090; 1176701-091; 1176701-092; 1176701-093; 1176701-094; 1176701-095; 1176701-096; 1176701-097; 1176701-098; 1176701-099; 1176701-100; 1176701-101; 1176701-102; 1176701-103; 1176701-104; 1176701-105; 1176701-106; 1176701-107; 1176701-108; 1176701-109; 1176701-110; 1176701-111; 1176701-112; 1176701-113; 1176701-114; 1176701-115; 1176701-116; 1176701-117; 1176701-118; 1176701-119; 1176701-120; 1176701-121; 1176701-122; 1176701-123; 1176701-124; 1176701-125; 1176701-126; 1176701-127; 1176701-128; 1176701-129; 1176701-130; 1176701-131; 1176701-132; 1176701-133; 1176701-134; 1176701-135; 1176701-136; 1176701-137; 1176701-138; 1176701-139; 1176701-140; 1176701-141; 1176701-142; 1176701-143; 1176701-144; 1176701-145; 1176701-146; 1176701-147; 1176701-148; 1176701-149; 1176701-150; 1176701-151; 1176701-152; 1176701-153; 1176701-154; 1176701-155; 1176701-156; 1176701-157; 1176701-158; 1176701-159; 1176701-160; 1176701-161; 1176701-162; 1176701-

163; 1176701-164; 1176701-165; 1176701-166; 1176701-167; 1176701-168; 1176701-169; 1176701-170; 1176701-171; 1176701-172; 1176701-173; 1176701-174; 1176701-175; 1176701-176; 1176701-177; 1176701-178; 1176701-179; 1176701-180; 1176701-181; 1176701-182; 1176701-183; 1176701-184; 1176701-185; 1176701-186; 1176701-187; 1176701-188; 1176701-189; 1176701-190; 1176701-191; 1176701-192; 1176701-193; 1176701-194; 1176701-195; 1176701-196; 1176701-197; 1176701-198; 1176701-199; 1176701-200; 1176701-201; 1176701-202; 1176701-203; 1176701-204; 1176701-205; 1176701-206; 1176701-207; 1176701-208; 1176701-209; 1176701-210; 1176701-211; 1176701-212; 1176701-213; 1176701-214; 1176701-215; 1176701-216; 1176701-217; 1176701-218; 1176701-219; 1176701-220; 1176701-221; 1176701-222; 1176701-223; 1176701-224; 1176701-225; 1176701-226; 1176701-227; 1176701-228; 1176701-229; 1176701-230; 1176701-231; 1176701-232; 1176701-233; 1176701-234; 1176701-235; 1176701-236; 1176701-237; 1176701-238; 1176701-239; 1176701-240; 1176701-241; 1176701-242; 1176701-243; 1176701-244; 1176701-245; 1176701-246; 1176701-247; 1176701-248; 1176701-249; 1176701-250; 1176701-251; 1176701-252; 1176701-253; 1176701-254; 1176701-255; 1176701-256; 1176701-257; 1176701-258; 1176701-259; 1176701-260; 1176701-261; 1176701-262; 1176701-263; 1176701-264; 1176701-265; 1176701-266; 1176701-267; 1176701-268; 1176701-269; 1176701-270; 1176701-271; 1176701-272; 1176701-273; 1176701-274; 1176701-275; 1176701-276; 1176701-277; 1176701-278; 1176701-279; 1176701-280; 1176701-281; 1176701-282; 1176701-283; 1176701-284; 1176701-285; 1176701-286; 1176701-287; 1176701-288; 1176701-289; 1176701-290; 1176701-291; 1176701-292; 1176701-293; 1176701-294; 1176701-295; 1176701-296; 1176701-297; 1176701-298; 1176701-299; 1176701-300; 1176701-301; 1176701-302; 1176701-303; 1176701-304; 1176701-305; 1176701-306; 1176701-307; 1176701-308; 1176701-309; 1176701-310; 1176701-311; 1176701-315; 1176701-316; 1176701-317; 1176701-318; 1176701-319; 1176701-320; 1176701-321; 1176701-322; 1176701-323; 1176701-324; 1176701-325; 1176701-326; 1176701-327; 1176701-328; 1176701-329; 1176701-330; 1176701-331; 1176701-332; 1176701-333; 1176701-334; 1176701-335; 1176701-336; 1176701-337; 1176701-338; 1176701-339; 1176701-340; 1176701-341; 1176701-342; 1176701-343; 1176701-344; 1176701-345; 1176701-346; 1176701-347; 1176701-348; 1176701-349; 1176701-350; 1176701-351; 1176701-352; 1176701-353; 1176701-354; 1176701-355; 1176701-356; 1176701-357; 1176701-358; 1176701-359; 1176701-360; 1176701-361; 1176701-362; 1176701-363; 1176701-364; 1176701-365; 1176701-366; 1176701-367; 1176701-368; 1176701-369; 1176701-370; 1176701-371; 1176701-372; 1176701-373; 1176701-374; 1176701-375; 1176701-376; 1176701-377; 1176701-378; 1176701-379; 1176701-380; 1176701-381; 1176701-382; 1176701-383; 1176701-384; 1176701-385; 1176701-386; 1176701-387; 1176701-388; 1176701-389; 1176701-390; 1176701-391; 1176701-392; 1176701-393; 1176701-394; 1176701-395; 1176701-396; 1176701-397; 1176701-398; 1176701-399; 1176701-400; 1176701-401; 1176701-402; 1176701-403; 1176701-404; 1176701-405; 1176701-406; 1176701-407; 1176701-408; 1176701-409; 1176701-410; 1176701-411; 1176701-412; 1176701-413; 1176701-414; 1176701-415; 1176701-416; 1176701-417; 1176701-418; 1176701-419; 1176701-420; 1176701-421; 1176701-422; 1176701-423; 1176701-424; 1176701-425; 1176701-426; 1176701-427; 1176701-428; 1176701-429; 1176701-430; 1176701-431; 1176701-432; 1176701-433; 1176701-434; 1176701-435; 1176701-436; 1176701-437; 1176701-438; 1176701-439; 1176701-440; 1176701-441; 1176701-442; 1176701-443; 1176701-444; 1176701-445; 1176701-446; 1176701-447; 1176701-448; 1176701-449; 1176701-450; 1176701-451; 1176701-452; 1176701-453; 1176701-454; 1176701-455; 1176701-456; 1176701-457; 1176701-458; 1176701-459; 1176701-460; 1176701-461; 1176701-462; 1176701-463; 1176701-464; 1176701-465; 1176701-466; 1176701-467; 1176701-468; 1176701-469; 1176701-470; 1176701-471; 1176701-472; 1176701-473; 1176701-474; 1176701-475; 1176701-476; 1176701-477; 1176701-478; 1176701-479; 1176701-480; 1176701-481; 1176701-482; 1176701-483; 1176701-484; 1176701-485; 1176701-486; 1176701-487; 1176701-488; 1176701-489; 1176701-490; 1176701-491; 1176701-492; 1176701-493; 1176701-494; 1176701-495; 1176701-496; 1176701-497; 1176701-498; 1176701-499; 1176701-500; 1176701-501; 1176701-502; 1176701-503; 1176701-504; 1176701-505; 1176701-506; 1176701-507; 1176701-508; 1176701-509; 1176701-510; 1176701-511; 1176701-512; 1176701-513; 1176701-514; 1176701-515; 1176701-516; 1176701-517; 1176701-518; 1176701-519; 1176701-520; 1176701-521; 1176701-522; 1176701-523; 1176701-524; 1176701-525; 1176701-526; 1176701-527; 1176701-528; 1176701-529; 1176701-530; 1176701-531; 1176701-532; 1176701-533; 1176701-534; 1176701-535; 1176701-536; 1176701-537; 1176701-538; 1176701-539; 1176701-540; 1176701-541; 1176701-542; 1176701-543; 1176701-544; 1176701-545; 1176701-546; 1176701-547; 1176701-548; 1176701-549; 1176701-550; 1176701-551; 1176701-552; 1176701-553; 1176701-554; 1176701-555; 1176701-556; 1176701-557; 1176701-558; 1176701-559; 1176701-560; 1176701-561; 1176701-562; 1176701-563; 1176701-564; 1176701-565; 1176701-566; 1176701-567; 1176701-568; 1176701-569; 1176701-570; 1176701-571; 1176701-572; 1176701-573; 1176701-574; 1176701-575; 1176701-576; 1176701-577; 1176701-578; 1176701-579; 1176701-580; 1176701-581; 1176701-582; 1176701-583; 1176701-584; 1176701-585; 1176701-586; 1176701-587; 1176701-588; 1176701-589; 1176701-590; 1176701-591; 1176701-592; 1176701-593; 1176701-594; 1176701-595; 1176701-596; 1176701-597; 1176701-598; 1176701-599; 1176701-600; 1176701-601; 1176701-602; 1176701-603; 1176701-604; 1176701-605; 1176701-606; 1176701-607; 1176701-608; 1176701-609; 1176701-610; 1176701-611; 1176701-612; 1176701-613; 1176701-614; 1176701-615; 1176701-616; 1176701-617; 1176701-618; 1176701-619; 1176701-620; 1176701-621; 1176701-622; 1176701-623; 1176701-624; 1176701-625; 1176701-626; 1176701-627; 1176701-628; 1176701-629; 1176701-630; 1176701-631; 1176701-632; 1176701-633; 1176701-634; 1176701-635; 1176701-636; 1176701-637; 1176701-638; 1176701-639; 1176701-640; 1176701-641; 1176701-642; 1176701-643; 1176701-644; 1176701-645; 1176701-646; 1176701-647; 1176701-648; 1176701-649; 1176701-650; 1176701-651; 1176701-652; 1176701-653; 1176701-654; 1176701-655; 1176701-656; 1176701-657; 1176701-658; 1176701-659; 1176701-660; 1176701-661; 1176701-662; 1176701-663; 1176701-664; 1176701-665; 1176701-666; 1176701-667; 1176701-668; 1176701-669; 1176701-670; 1176701-671; 1176701-672; 1176701-673; 1176701-674; 1176701-675; 1176701-676; 1176701-677; 1176701-678; 1176701-679; 1176701-680; 1176701-681; 1176701-682; 1176701-683; 1176701-684; 1176701-685; 1176701-686; 1176701-687; 1176701-688; 1176701-689; 1176701-690; 1176701-691; 1176701-692; 1176701-

693; 1176701-694; 1176701-695; 1176701-696; 1176701-697; 1176701-698; 1176701-699; 1176701-700; 1176701-701; 1176701-702; 1176701-703; 1176701-704; 1176701-705; 1176701-706; 1176701-707; 1176701-708; 1176701-709; 1176701-710; 1176701-711; 1176701-712; 1176701-713; 1176701-714; 1176701-715; 1176701-716; 1176701-717; 1176701-718; 1176701-719; 1176701-720; 1176701-721; 1176701-722; 1176701-723; 1176701-724; 1176701-725; 1176701-726; 1176701-727; 1176701-728; 1176701-729; 1176701-730; 1176701-731; 1176701-732; 1176701-733; 1176701-734; 1176701-735; 1176701-736; 1176701-737; 1176701-738; 1176701-739; 1176701-740; 1176701-741; 1176701-742; 1176701-743; 1176701-744; 1176701-745; 1176701-746; 1176701-747; 1176701-748; 1176701-749; 1176701-750; 1176701-751; 1176701-752; 1176701-753; 1176701-754; 1176701-755; 1176701-756; 1176701-757; 1176701-758; 1176701-759; 1176701-760; 1176701-761; 1176701-762; 1176701-763; 1176701-764; 1176701-765; 1176701-766; 1176701-767; 1176701-768; 1176701-769; 1176701-770; 1176701-771; 1176701-772; 1176701-773; 1176701-774; 1176701-775; 1176701-776; 1176701-777; 1176701-778; 1176701-779; 1176701-780; 1176701-781; 1176701-782; 1176701-783; 1176701-784; 1176701-785; 1176701-786; 1176701-787; 1176701-788; 1176701-789; 1176701-790; 1176701-791; 1176701-792; 1176701-793; 1176701-794; 1176701-795; 1176701-796; 1176701-797; 1176701-798; 1176701-799; 1176701-800; 1176701-801; 1176701-802; 1176701-803; 1176701-804; 1176701-805; 1176701-806; 1176701-807; 1176701-808; 1176701-809; 1176701-810; 1176701-811; 1176701-812; 1176701-813; 1176701-814; 1176701-815; 1176701-816; 1176701-817; 1176701-818; 1176701-819; 1176701-820; 1176701-821; 1176701-822; 1176701-823; 1176701-824; 1176701-825; 1176701-826; 1176701-827; 1176701-828; 1176701-829; 1176701-830; 1176701-831; 1176701-832; 1176701-833; 1176701-834; 1176701-835; 1176701-836; 1176701-837; 1176701-838; 1176701-839; 1176701-840; 1176701-841; 1176701-842; 1176701-843; 1176701-844; 1176701-845; 1176701-846; 1176701-847; 1176701-848; 1176701-849; 1176701-850; 1176701-851; 1176701-852; 1176701-853; 1176701-854; 1176701-855; 1176701-856; 1176701-857; 1176701-858; 1176701-859; 1176701-860; 1176701-861; 1176701-862; 1176701-863; 1176701-864; 1176701-865; 1176701-866; 1176701-867; 1176701-868; 1176701-869; 1176701-870; 1176701-871; 1176701-872; 1176701-873; 1176701-874; 1176701-875; 1176701-876; 1176701-877; 1176701-878; 1176701-879; 1176701-880; 1176701-881; 1176701-882; 1176701-883; 1176701-884; 1176701-885; 1176701-886; 1176701-887; 1176701-888; 1176701-889; 1176701-890; 1176701-891; 1176701-892; 1176701-893; 1176701-894; 1176701-895; 1176701-896; 1176701-897; 1176701-898; 1176701-899; 1176701-900; 1176701-901; 1176701-902; 1176701-903; 1176701-904; 1176701-905; 1176701-906; 1176701-907; 1176701-908; 1176701-909; 1176701-910; 1176701-911; 1176701-912; 1176701-913; 1176701-914; 1176701-915; 1176701-916; 1176701-917; 1176701-918; 1176701-919; 1176701-920; 1176701-921; 1176701-922; 1176701-923; 1176701-924; 1176701-925; 1176701-926; 1176701-927; 1176701-928; 1176701-929; 1176701-930; 1176701-931; 1176701-932; 1176701-933; 1176701-934; 1176701-935; 1176701-936; 1176701-937; 1176701-938; 1176701-939; 1176701-940; 1176701-941; 1176701-942; 1176701-943; 1176701-944; 1176701-945; 1176701-946; 1176701-947; 1176701-948; 1176701-949; 1176701-950; 1176701-951; 1176701-952; 1176701-953; 1176701-954; 1176701-955; 1176701-956; 1176701-957; 1176701-958; 1176701-959; 1176701-960; 1176701-961; 1176701-962; 1176701-963; 1176701-964; 1176701-965; 1176701-966; 1176701-967; 1176701-968; 1176701-969; 1176701-970; 1176701-971; 1176701-972; 1176701-973; 1176701-974; 1176701-975; 1176701-976; 1176701-977; 1176701-978; 1176701-979; 1176701-980; 1176701-981; 1176701-982; 1176701-983; 1176701-984; 1176701-985; 1176701-986; 1176701-987; 1176701-988; 1176701-989; 1176701-990; 1176701-991; 1176701-992; 1176701-993; 1176701-994; 1176701-995; 1176701-996; 1176702-; 1176801-; 1176810-; 1176811-; 1176812-; 1176813-; 1176814-; 117NT000-1; 117NT000-3; 117NT001-1; 117NT001-11; 117NT001-23; 117NT001-27; 117NT001-3; 117NT001-31; 117NT001-33; 117NT001-5; 117NT001-7; 117NT001-9; 117NT002-1; 1191-1; 1191-2; 1191-21; 1191-23; 1191-26; 1191-28; 1191-3; 1191-31; 1191-33; 1191-38; 1191-4; 1191-41; 1191-46; 1191510-; 1191-6; 1191-8; 11918001-; 11918002-; 1191801-1; 1191801-2; 1191802-; 1191803-; 1191804-; 1191807-; 1191808-1; 1191808-2; 1191809-; 1191810-; 1191811-; 1191812-1; 1191812-2; 1191813-; 1191814-; 1191815-; 1191816-1; 1191816-2; 1191817-; 1191818-; 1191819-; 1191820-; 1191821-; 1191822-; 1191823-; 1191824-; 1191825-; 1191826-; 1191827-; 1191828-; 1191829-; 1191830-; 1191831-; 1191832-; 1191833-; 1191834-; 1191835-; 1191836-; 1191837-; 1191838-; 1191839-; 1191840-; 1191841-; 1191843-; 1191844-; 1191845-; 1191846-; 1191850-; 1191851-; 1191852-; 1191856-; 1191857-; 1191858-; 1191859-; 1191860-; 1191861-; 1191862-; 1191863-; 1191864-; 1191865-; 1191866-; 1191867-; 1191868-; 1191869-; 1191870-; 1191872-; 1191873-; 1191874-; 1191875-; 1191876-; 1191877-; 1191878-; 1191879-; 1191880-; 1191881-; 1191882-; 1191883-; 1191884-; 1191888-; 1191889-; 1191890-; 1191891-; 1191893-; 1191895-; 1191896-; 1191897-; 1191898-; 1193-1; 1193-2; 120NT000; 120NT000-1; 120NT000-11; 120NT000-13; 120NT000-17; 120NT000-3; 120NT000-5; 120NT000-7; 120NT000-9; 1215-1; 1215-20; 1215-30; 1235-1-; 1235-2-; 1235-20-; 1235-3-; 1235305-5; 1235-4-; 1235-5-; 1235511-; 1235511-3; 1235512-; 1235512-4; 1235513-; 1235513-1; 1235513-2; 1235-5-14; 1235515-2; 1235517-1; 1235517-2; 1235519-1; 1235520-1; 1235-6-; 1235-7-; 1235-8-; 1235-9-; 1248-10; 1248111-; 1248121-; 1248122-; 1248-20; 1248-21; 1248323-2; 1248323-3; 1248327-; 1248328-; 1248408-1; 1248409-1; 1248423-1; 1248801-; 1248803-; 1248804-; 1248805-; 1248806-; 1248808-; 1248809-; 1248811-; 1248812-; 1248814-; 1248815-; 1248816-; 1248817-; 1248818-; 1248819-; 1248820-; 1248821-; 1248823-; 1248824-; 1248825-; 1248826-; 1248827-; 1248828-; 1248829-; 1248830-; 1248850-; 1248851-; 1248852-; 1248853-; 1248854-; 1248855-; 1248856-; 1248857-; 1248858-; 1248859-; 1248860-; 1248861-; 1248862-; 1248863-; 1248864-; 1248865-; 1248866-; 1248867-; 1248869-; 1248870-; 1248871-; 1248872-; 1248873-; 1248874-; 1248875-; 1248876-; 1248877-; 1248881-; 1248885-; 1248888-; 1248889-; 1248890-; 1248891-; 1248892-; 1248893-; 1248894-; 1248895-; 1249103-1; 1249112-1; 1249113-2; 1249114-1; 1249115-1; 1281-1; 1284-1; 1284806-; 1284807-; 1284810-; 1284833-; 1285-1; 1285-2; 1285-3; 1285-4; 1285-5; 1285-6; 1291801-; 1291802-; 1291803-; 1291804-; 1291806-; 1291807-; 1291808-; 1291810-; 1291811-; 1291812-; 1291813-; 1291814-; 1291815-; 1291816-; 1291817-; 1291818-; 1291821-; 1291822-; 1291823-; 1291824-; 1291830-; 1291832-; 1291833-; 1291834-; 1291835-; 1291836-; 1291837-; 1291838-; 1291839-; 1291840-; 1291841-; 1291842-;

1291843-; 1291844-; 1291846-; 1291847-; 1291848-; 1291849-; 12918801-; 1292-1-; 1292-10-; 1292-11-; 1292-15-; 1292-16-; 1292-2-; 1292-3-; 1292-4-; 1292-5-; 1292501-; 1292506-; 1292507-1; 1292508-1; 1292-6-; 1292-7-; 1292-8-; 1292805-; 1292806-; 1292824-; 1292825-; 1292826-; 1292827-; 1292-9-; 1294-1-; 1294-2-; 1294-3-; 1294-4-; 1294-5-; 1294501-; 1294801-; 1294802-; 1294803-; 1294804-; 1294805-; 1294806-; 1294807-; 1294808-; 1294809-; 1294810-; 1295-1-; 1295-10-; 1295-11-; 1295-12-105-1; 1295-12-105-2; 1295-12-105-3; 1295-12-105-4; 1295-12-113-1; 1295-12-118-1; 1295-12-127-4; 1295-12-18-1; 1295-2-; 1295-3-; 1295-4-; 1295-5-; 1295511-; 1295512-; 1295513-; 1295-8-; 1295825-; 1295826-; 1295827-; 1295828-; 1295-9-; 12998001-; 12998002-; 12998005-; 1299803-; 1299805-; 1299810-; 1299814-; 1299815-; 1299817-; 1299818-; 1299819-; 1299826-; 1299828-; 1299835-; 1299836-; 1299837-; 1299838-; 1299839-; 1299984-; 1299840-; 1299841-; 1299842-; 1299843-; 1299844-; 1299845-; 129985-; 1299851-; 1299852-; 1299854-; 1299855-; 1299856-; 1299857-; 1299860-; 1299861-; 1299862-; 1299863-; 1299864-; 1299865-; 1299870-; 1299871-; 1299872-; 1299873-; 1299874-; 1299877-; 1299878-; 1299879-; 1299880-; 1299881-; 1299883-; 1299884-; 1299885-; 1299888-; 1299889-; 1299893-; 1299894-; 1299895-; 1299896-; 1299897-; 1299898-; 1301-1; 1301-4-; 1301-6; 1301701-023; 1301701-059; 1301701-063; 1301701-067; 1301701-113; 1301701-114; 1301701-145; 1301701-172; 1301701-189; 1301701-222; 1301701-315; 1301701-316; 1301701-317; 1301701-318; 1301701-319; 1301701-320; 1301701-321; 1301701-322; 1301701-343; 1301701-344; 1301701-345; 1301701-373; 1301701-374; 1301701-375; 1301701-378; 1301701-386; 1301701-387; 1301701-388; 1301701-389; 1301701-390; 1301701-392; 1301701-397; 1301701-438; 1301701-450; 1301701-452; 1301701-457; 1301701-464; 1301701-465; 1301701-466; 1301701-467; 1301701-473; 1301701-474; 1301701-484; 1301701-496; 1301701-499; 1301701-501; 1301701-506; 1301701-507; 1301701-508; 1301701-521; 1301701-535; 1301701-558; 1301701-560; 1301701-561; 1301701-562; 1301701-563; 1301701-564; 1301701-565; 1301701-568; 1301701-569; 1301701-570; 1301701-571; 1301701-572; 1301701-600; 1301701-622; 1301701-623; 1301701-624; 1301701-625; 1301701-626; 1301701-627; 1301701-628; 1301701-629; 1301701-630; 1301701-631; 1301701-633; 1301701-661; 1301701-662; 1301701-663; 1301701-664; 1301701-674; 1301701-675; 1301701-738; 1301701-739; 1301701-740; 1301701-807; 1301701-808; 1301701-829; 1301701-830; 1301701-831; 1301701-832; 1301701-833; 1301701-873; 1301701-874; 1301701-875; 1301701-876; 1301701-877; 1301701-878; 1301701-879; 1301701-881; 1301701-891; 1301701-892; 1301701-893; 1301701-894; 1301701-895; 1301701-914; 1301701-915; 1301701-916; 1301701-922; 1301701-923; 1301701-924; 1301701-925; 1301701-943; 1301701-946; 1301701-947; 1301701-960; 1301701-963; 1301-76; 1301-8; 1301801-1; 1301801-2; 1301801-92; 1301802-; 1301803-; 1301806-; 1301807-; 1301808-; 1301809-; 1301810-; 1301811-; 1301815-; 1301816-; 1301818-; 1301819-; 1301820-; 1301821-; 1301822-; 1301823-; 1301824-; 1301825-; 1301826-; 1301827-; 1301828-; 1301830-; 1301831-; 1301832-; 1301833-; 1301834-; 1301835-; 1301836-; 1301837-; 1301838-; 1301839-; 1301840-; 1301841-; 1301845-; 1301846-; 1301847-; 1301848-; 1301849-; 1301850-; 1301851-; 1301-85-1; 1301852-; 1301-85-2; 1301853-; 1301-85-3; 1301854-; 1301-85-4; 1301855-; 1301-85-5; 1301856-; 1301857-; 1301858-; 1301859-; 1301860-; 1301861-; 1301862-; 1301863-; 1301864-; 1301866-; 1301867-; 1301870-; 1301871-; 1301872-; 1301873-; 1301874-; 1301876-; 1301878-; 1301879-; 1301880-; 1301881-; 1301882-; 1301883-; 1301884-; 1301885-; 1301886-; 1301887-; 1301888-; 1301889-; 1301890-; 1301891-; 1301892-; 1301893-; 1301894-; 1301895-; 1301896-; 1301-92-; 1301-93-; 1301-94-; 1301-95-; 1301-96-; 1303-10-; 1303-100-; 1303-101-; 1303-102; 1303-103; 1303-104; 1303-105; 1303-106-; 1303-107-; 1303-108-; 1303-109-; 1303-11-; 1303-110-; 1303-111-; 1303-112-; 1303-113-; 1303-114-; 1303-115-; 1303-116-; 1303-117-; 1303-119-; 1303-12; 1303-120-; 1303-121; 1303-122-; 1303-123-; 1303-124-; 1303-125-; 1303-126-; 1303-127-; 1303-128-; 1303-129-; 1303-13; 1303-130-; 1303-131-; 1303-132-; 1303-133-; 1303-134-; 1303-135-; 1303-136-; 1303-137-; 1303-138; 1303-139-; 1303-14-; 1303-140-; 1303-141-; 1303-142-; 1303-143-; 1303-144-; 1303-145-; 1303-146-; 1303-147-; 1303-148-; 1303-149; 1303-15-; 1303-150-; 1303-151-; 1303-152-; 1303-153-; 1303-154-; 1303-155-; 1303-156-; 1303-157-; 1303-158-; 1303-159-; 1303-16-; 1303-160; 1303-161; 1303-162-; 1303-163; 1303-164-; 1303-165-; 1303-166-; 1303-167-; 1303-168-; 1303-169-; 1303-17; 1303-170-; 1303-171-; 1303-172-; 1303-173-; 1303-174-; 1303-175-; 1303-176; 1303-177-; 1303-178-; 1303-179-; 1303-18; 1303-180-; 1303-181-; 1303-182; 1303-183-; 1303-184-; 1303-185-; 1303-186-; 1303-187; 1303-188; 1303-189; 1303-19; 1303-190; 1303-191; 1303-192-; 1303-193-; 1303-194-; 1303-195-; 1303-196-; 1303-197; 1303-198-; 1303-199; 1303-2-; 1303-20; 1303-200; 1303-201; 1303-202; 1303-203; 1303-204-; 1303-205; 1303-206; 1303-207; 1303-209-; 1303-21; 1303-210-; 1303-211-; 1303-212-; 1303-213-; 1303-214-; 1303-215-; 1303-216; 1303-217; 1303-218-; 1303-219-; 1303-22-; 1303-220-; 1303-221-; 1303-222-; 1303-223-; 1303-224-; 1303-225-; 1303-226-; 1303-227-; 1303-228-; 1303-229-; 1303-23-; 1303-230; 1303-231-; 1303-232-; 1303-233; 1303-234-; 1303-235-; 1303-236-; 1303-237-; 1303-238-; 1303-239-; 1303-24-; 1303-240-; 1303-241-; 1303-242-; 1303-243-; 1303-244-; 1303-245-; 1303-246-; 1303-247-; 1303-248-; 1303-249-; 1303-25; 1303-250-; 1303-251-; 1303-252-; 1303-253-; 1303-254-; 1303-255-; 1303-256-; 1303-257; 1303-258; 1303-259-; 1303-26; 1303-260-; 1303-261-; 1303-262-; 1303-263-; 1303-264; 1303-265-; 1303-266-; 1303-267-; 1303-268-; 1303-269-; 1303-27; 1303-270; 1303-271-; 1303-274-; 1303-276-; 1303-277-; 1303-278-; 1303-279-; 1303-28; 1303-280-; 1303-281-; 1303-282-; 1303-283-; 1303-284-; 1303-285-; 1303-286-; 1303-287-; 1303-288-; 1303-289-; 1303-29-; 1303-290-; 1303-291-; 1303-293-; 1303-294-; 1303-295; 1303-296-; 1303-297-; 1303-3-; 1303-30-; 1303-304; 1303-305-; 1303-306-; 1303-307-; 1303-308-; 1303-31-; 1303-315-; 1303-316; 1303-317; 1303-318-; 1303-319; 1303-32-; 1303-320-; 1303-321-; 1303-322; 1303-323-; 1303-324; 1303-325; 1303-326; 1303-327-; 1303-328-; 1303-329-; 1303-33-; 1303-330-; 1303-331-; 1303-332; 1303-333; 1303-334; 1303-336-; 1303-337-; 1303-338-; 1303-339-; 1303-34; 1303-340-; 1303-341-; 1303-342-; 1303-343-; 1303-344-; 1303-345-; 1303-346-; 1303-347-; 1303-348; 1303-349; 1303-35-; 1303-350; 1303-351; 1303-352-; 1303-353-; 1303-354-; 1303-355-; 1303-356-; 1303-357-; 1303-358-; 1303-359-; 1303-36-; 1303-37; 1303-38-; 1303-39-; 1303-4-; 1303-40-; 1303-41-; 1303-42-; 1303-43-; 1303-45-; 1303-46; 1303-47-005; 1303-47-018; 1303-47-045; 1303-47-059; 1303-47-061; 1303-47-064; 1303-47-071; 1303-47-096; 1303-47-112; 1303-47-113; 1303-47-120; 1303-47-121; 1303-47-122; 1303-47-124; 1303-47-125; 1303-47-126; 1303-47-128; 1303-47-138; 1303-47-139; 1303-47-140; 1303-47-141; 1303-47-142; 1303-47-143; 1303-47-144; 1303-47-145; 1303-47-146; 1303-47-147; 1303-47-148;

1303-47-149; 1303-47-150; 1303-47-151; 1303-47-152; 1303-47-153; 1303-47-154; 1303-47-155; 1303-47-156; 1303-47-157;
1303-47-158; 1303-47-159; 1303-47-160; 1303-47-161; 1303-47-162; 1303-47-163; 1303-47-164; 1303-47-165; 1303-47-166;
1303-47-167; 1303-47-168; 1303-47-169; 1303-47-170; 1303-47-171; 1303-47-172; 1303-47-173; 1303-47-174; 1303-47-175;
1303-47-176; 1303-47-177; 1303-47-178; 1303-47-179; 1303-47-180; 1303-47-181; 1303-47-182; 1303-47-184; 1303-47-185;
1303-47-188; 1303-47-189; 1303-47-190; 1303-47-191; 1303-47-192; 1303-47-193; 1303-47-194; 1303-47-197; 1303-47-198;
1303-47-199; 1303-47-200; 1303-47-201; 1303-47-202; 1303-47-203; 1303-47-217; 1303-47-218; 1303-47-219; 1303-47-220;
1303-47-221; 1303-47-222; 1303-47-223; 1303-47-224; 1303-47-226; 1303-47-227; 1303-47-230; 1303-47-231; 1303-47-232;
1303-47-233; 1303-47-234; 1303-47-235; 1303-47-239; 1303-47-240; 1303-47-241; 1303-47-242; 1303-47-243; 1303-47-244;
1303-47-245; 1303-47-246; 1303-47-247; 1303-47-249; 1303-47-250; 1303-47-251; 1303-47-252; 1303-47-253; 1303-47-254;
1303-47-257; 1303-47-261; 1303-47-262; 1303-47-263; 1303-47-264; 1303-47-269; 1303-47-270; 1303-47-279; 1303-47-280;
1303-47-281; 1303-47-282; 1303-47-288; 1303-47-289; 1303-47-317; 1303-47-323; 1303-47-324; 1303-47-325; 1303-47-326;
1303-47-327; 1303-47-328; 1303-47-330; 1303-47-331; 1303-47-332; 1303-47-333; 1303-47-334; 1303-47-335; 1303-47-336;
1303-47-337; 1303-47-338; 1303-47-339; 1303-47-340; 1303-47-346; 1303-47-347; 1303-47-348; 1303-47-349; 1303-47-350;
1303-47-351; 1303-47-352; 1303-47-353; 1303-47-354; 1303-47-355; 1303-47-356; 1303-47-357; 1303-47-358; 1303-47-359;
1303-47-360; 1303-47-361; 1303-47-362; 1303-47-363; 1303-47-364; 1303-47-365; 1303-47-366; 1303-47-367; 1303-47-368;
1303-47-369; 1303-47-370; 1303-47-371; 1303-47-372; 1303-47-376; 1303-47-377; 1303-47-379; 1303-47-380; 1303-47-381;
1303-47-382; 1303-47-383; 1303-47-384; 1303-47-385; 1303-47-387; 1303-47-393; 1303-47-394; 1303-47-395; 1303-47-396;
1303-47-397; 1303-47-398; 1303-47-399; 1303-47-400; 1303-47-401; 1303-47-402; 1303-47-403; 1303-47-404; 1303-47-405;
1303-47-406; 1303-47-407; 1303-47-408; 1303-47-409; 1303-47-410; 1303-47-411; 1303-47-412; 1303-47-413; 1303-47-414;
1303-47-415; 1303-47-416; 1303-47-417; 1303-47-418; 1303-47-419; 1303-47-420; 1303-47-421; 1303-47-422; 1303-47-423;
1303-47-424; 1303-47-425; 1303-47-426; 1303-47-427; 1303-47-431; 1303-47-432; 1303-47-433; 1303-47-434; 1303-47-435;
1303-47-436; 1303-47-437; 1303-47-438; 1303-47-439; 1303-47-440; 1303-47-441; 1303-47-442; 1303-47-443; 1303-47-444;
1303-47-445; 1303-47-446; 1303-47-447; 1303-47-448; 1303-47-449; 1303-47-450; 1303-47-451; 1303-47-452; 1303-47-453;
1303-47-454; 1303-47-456; 1303-47-457; 1303-47-458; 1303-47-459; 1303-47-460; 1303-47-461; 1303-47-462; 1303-47-463;
1303-47-468; 1303-47-469; 1303-47-470; 1303-47-471; 1303-47-472; 1303-47-473; 1303-47-474; 1303-47-475; 1303-47-476;
1303-47-477; 1303-47-478; 1303-47-479; 1303-47-480; 1303-47-481; 1303-47-482; 1303-47-483; 1303-47-484; 1303-47-485;
1303-47-486; 1303-47-487; 1303-47-488; 1303-47-489; 1303-47-490; 1303-47-491; 1303-47-492; 1303-47-493; 1303-47-494;
1303-47-495; 1303-47-496; 1303-47-497; 1303-47-498; 1303-47-502; 1303-47-503; 1303-47-504; 1303-47-505; 1303-47-506;
1303-47-507; 1303-47-508; 1303-47-510; 1303-47-511; 1303-47-512; 1303-47-515; 1303-47-516; 1303-47-517; 1303-47-518;
1303-47-519; 1303-47-521; 1303-47-522; 1303-47-523; 1303-47-526; 1303-47-527; 1303-47-528; 1303-47-529; 1303-47-530;
1303-47-532; 1303-47-533; 1303-47-534; 1303-47-535; 1303-47-536; 1303-47-537; 1303-47-539; 1303-47-540; 1303-47-541;
1303-47-542; 1303-47-543; 1303-47-544; 1303-47-545; 1303-47-546; 1303-47-547; 1303-47-548; 1303-47-549; 1303-47-550;
1303-47-551; 1303-47-552; 1303-47-553; 1303-47-554; 1303-47-555; 1303-47-556; 1303-47-557; 1303-47-559; 1303-47-564;
1303-47-565; 1303-47-567; 1303-47-573; 1303-47-574; 1303-47-575; 1303-47-576; 1303-47-580; 1303-47-581; 1303-47-582;
1303-47-583; 1303-47-584; 1303-47-585; 1303-47-586; 1303-47-587; 1303-47-588; 1303-47-589; 1303-47-590; 1303-47-591;
1303-47-592; 1303-47-593; 1303-47-594; 1303-47-595; 1303-47-596; 1303-47-597; 1303-47-598; 1303-47-599; 1303-47-601;
1303-47-602; 1303-47-603; 1303-47-604; 1303-47-605; 1303-47-606; 1303-47-607; 1303-47-608; 1303-47-609; 1303-47-610;
1303-47-611; 1303-47-612; 1303-47-613; 1303-47-614; 1303-47-615; 1303-47-616; 1303-47-617; 1303-47-618; 1303-47-619;
1303-47-620; 1303-47-621; 1303-47-631; 1303-47-632; 1303-47-635; 1303-47-636; 1303-47-637; 1303-47-638; 1303-47-639;
1303-47-640; 1303-47-641; 1303-47-642; 1303-47-643; 1303-47-644; 1303-47-645; 1303-47-646; 1303-47-647; 1303-47-648;
1303-47-649; 1303-47-650; 1303-47-651; 1303-47-652; 1303-47-656; 1303-47-657; 1303-47-658; 1303-47-659;
1303-47-660; 1303-47-665; 1303-47-666; 1303-47-667; 1303-47-668; 1303-47-669; 1303-47-670; 1303-47-671; 1303-47-672;
1303-47-673; 1303-47-676; 1303-47-677; 1303-47-678; 1303-47-679; 1303-47-680; 1303-47-681; 1303-47-687; 1303-47-688;
1303-47-689; 1303-47-690; 1303-47-691; 1303-47-692; 1303-47-693; 1303-47-694; 1303-47-695; 1303-47-696; 1303-47-697;
1303-47-698; 1303-47-699; 1303-47-700; 1303-47-701; 1303-47-702; 1303-47-703; 1303-47-704; 1303-47-705; 1303-47-706;
1303-47-707; 1303-47-708; 1303-47-709; 1303-47-710; 1303-47-712; 1303-47-713; 1303-47-714; 1303-47-715; 1303-47-716;
1303-47-717; 1303-47-718; 1303-47-719; 1303-47-720; 1303-47-721; 1303-47-722; 1303-47-723; 1303-47-724; 1303-47-725;
1303-47-726; 1303-47-727; 1303-47-728; 1303-47-729; 1303-47-730; 1303-47-731; 1303-47-732; 1303-47-733; 1303-47-734;
1303-47-740; 1303-47-741; 1303-47-742; 1303-47-743; 1303-47-744; 1303-47-745; 1303-47-746; 1303-47-753; 1303-47-754;
1303-47-755; 1303-47-756; 1303-47-757; 1303-47-758; 1303-47-759; 1303-47-760; 1303-47-761; 1303-47-762; 1303-47-763;
1303-47-764; 1303-47-765; 1303-47-766; 1303-47-767; 1303-47-768; 1303-47-769; 1303-47-770; 1303-47-771; 1303-47-772;
1303-47-773; 1303-47-774; 1303-47-775; 1303-47-776; 1303-47-777; 1303-47-778; 1303-47-779; 1303-47-780; 1303-47-781;
1303-47-782; 1303-47-783; 1303-47-784; 1303-47-785; 1303-47-786; 1303-47-787; 1303-47-788; 1303-47-789; 1303-47-790;
1303-47-791; 1303-47-792; 1303-47-793; 1303-47-794; 1303-47-795; 1303-47-796; 1303-47-797; 1303-47-798; 1303-47-799;
1303-47-800; 1303-47-801; 1303-47-802; 1303-47-803; 1303-47-804; 1303-47-805; 1303-47-806; 1303-47-807; 1303-47-815;
1303-47-816; 1303-47-817; 1303-47-818; 1303-47-819; 1303-47-820; 1303-47-821; 1303-47-822; 1303-47-823; 1303-47-824;
1303-47-833; 1303-47-834; 1303-47-835; 1303-47-836; 1303-47-837; 1303-47-838; 1303-47-839; 1303-47-840; 1303-47-841;
1303-47-842; 1303-47-843; 1303-47-853; 1303-47-854; 1303-47-855; 1303-47-859; 1303-47-866; 1303-47-867; 1303-47-868;
1303-47-869; 1303-47-870; 1303-47-871; 1303-47-872; 1303-47-880; 1303-47-881; 1303-47-882; 1303-47-883; 1303-47-884;
1303-47-885; 1303-47-886; 1303-47-894; 1303-47-896; 1303-47-897; 1303-47-898; 1303-47-899; 1303-47-900; 1303-47-901;
1303-47-902; 1303-47-903; 1303-47-904; 1303-47-905; 1303-47-913; 1303-47-917; 1303-47-921; 1303-47-938; 1303-47-943;
1303-47-948; 1303-47-949; 1303-47-950; 1303-47-951; 1303-47-952; 1303-47-953; 1303-47-954; 1303-47-955; 1303-47-956;

1303-47-957; 1303-47-958; 1303-47-964; 1303-47-968; 1303-47-969; 1303-47-970; 1303-47-971; 1303-47-973; 1303-47-979; 1303-47-980; 1303-47-996; 1303-49; 1303-5-; 1303-50; 1303-51; 1303-52; 1303-53; 1303-54; 1303-55; 1303-56; 1303-57-; 1303-58; 1303-59; 1303-6-; 1303-60; 1303-61; 1303-62-; 1303-63-; 1303-64-; 1303-65-; 1303-66; 1303-67; 1303-68; 1303-69; 1303-7-; 1303-70; 1303-71; 1303-72; 1303-73-; 1303-74-; 1303-75-; 1303-76; 1303-77; 1303-78-; 1303-79-; 1303-8-; 1303-80-; 1303-81; 1303-82-; 1303-83; 1303-84-; 1303-85-; 1303-86; 1303-87; 1303-88; 1303-89-; 1303-9-; 1303-90-; 1303-91-; 1303-92-; 1303-93-; 1303-94; 1303-95; 1303-96-; 1303-97-; 1303-98-; 1303-99-; 1315-10; 1315-13; 1315-15; 1315-20; 1315-3; 1315-32; 1315801-; 1315812-; 1315813-; 1315814-; 131582-; 1315825-; 1315826-; 131583-; 1315830-; 1315831-; 1315832-; 1315833-; 1315834-; 1315835-; 1315836-; 1315837-; 1315838-; 1315839-; 131584-; 1315840-; 131584-; 1315842-; 1315843-; 1315844-; 1315845-; 1315846-; 1315848-; 1315849-; 1315850-; 1315851-; 1315852-; 1315853-; 1315855-; 1315856-; 1315857-; 1315858-; 1315859-; 131586-; 1315860-; 1315861-; 1315862-; 1315863-; 1315864-; 1315865-; 1315866-; 1315867-; 1315868-; 1315871-; 1315872-; 1315873-; 1315874-; 1315875-; 1315876-; 1315877-; 1315878-; 1315880-; 1315881-; 1315882-; 1315884-; 1315885-; 1315886-; 1315887-; 1315888-; 1315889-; 1315890-; 1315891-; 1315892-; 1315893-; 1315894-; 1360-1; 1364-1; 1364-10; 1366-1; 1366-103-; 1366-104; 1366-108-; 1366-111-; 1366-112-; 1366-114-; 1366-125-; 1366-135; 1366-145; 1366-146; 1366-152; 1366-154-; 1366-155-; 1366-164; 1366-165; 1366-167; 1366-168-; 1366-26; 1366-28; 1366-31; 1366-33; 1366-36; 1366-38; 1366-46; 1366-67; 1366701-1; 1366701-126; 1366701-397; 1366701-59; 1366-92-; 1366-94-; 1366-95-; 1390-1; 1501-030709; 1501-0715; 1501-101-; 1501-102-; 1501-106-; 1501-107-; 1501-11-; 1501-110-; 1501-111-; 1501-115-; 1501-116-; 1501-118-; 1501-119-; 1501-12-; 1501-120-; 1501-125; 1501-126; 1501-127; 1501-128; 1501-13-; 1501-135-; 1501-136; 1501-139; 1501-141; 1501-145; 1501-148; 1501-15-; 1501-150-; 1501-16-; 1501-196-; 1501-200; 1501-201-; 1501-202-; 1501-203; 1501-204-; 1501-205-; 1501-206-; 1501-207-; 1501-208; 1501-209; 1501-21-; 1501-210-; 1501-211-; 1501-212; 1501-213-; 1501-214-; 1501-215; 1501-216-; 1501-218-; 1501-22-; 1501-25; 1501-26-; 1501-27; 1501-28; 1501-305-; 1501-34; 1501-35; 1501-37; 1501-41; 1501-46; 1501-56; 1501-7-; 1501-92-; 1501-94-1; 1501-95; 1503-101-; 1503-103-; 1503-104-; 1503-110-; 1503-111-; 1503-112-; 1503-114-; 1503-115-; 1503-118-; 1503-119-; 1503-120-; 1503-123; 1503-125; 1503-126-; 1503-13; 1503-130-; 1503-131-; 1503-132-; 1503-133-; 1503-134-; 1503-140-; 1503-141-; 1503-142-; 1503-171-; 1503-193-; 1503-195-; 1503-2; 1503-201; 1503-202; 1503-211; 1503-212; 1503-221; 1503-222; 1503-223-; 1503-224-; 1503-225-; 1503-226; 1503-227-; 1503-228-; 1503-229-; 1503-230-; 1503-231-; 1503-232; 1503-233-; 1503-3-; 1503-307-; 1503-46; 1503-47-059; 1503-47-125; 1503-47-192; 1503-47-225; 1503-47-288; 1503-47-289; 1503-47-333; 1503-47-507; 1503-47-765; 1503-47-766; 1503-47-767; 1503-47-768; 1503-47-769; 1503-47-770; 1503-47-809; 1503-47-810; 1503-47-811; 1503-47-812; 1503-47-813; 1503-47-814; 1503-47-825; 1503-47-826; 1503-47-827; 1503-47-828; 1503-47-846; 1503-47-847; 1503-47-848; 1503-47-849; 1503-47-850; 1503-47-851; 1503-47-852; 1503-47-860; 1503-47-861; 1503-47-862; 1503-47-863; 1503-47-864; 1503-47-865; 1503-47-887; 1503-47-888; 1503-47-889; 1503-47-890; 1503-76; 1503-92-; 1503-94-1; 1503-94-2; 1503-94-; 1503-95-; 1505-1; 16-50019-006; 180725-; 180729-; 180811-; 180894-101; 180894-102; 180949-; 180950-; 180951-; 180952-; 181114-; 181198-; 181219-; 181220-; 181590-; 181591-; 181609-; 181610-101; 181613-; 181614-; 181615-; 181621-101; 181621-201; 181621-301; 181621-303; 181621-401; 181621-403; 181621-405; 181621-407; 181621-409; 181621-411; 181621-413; 181621-415; 181621-417; 181621-419; 181621-421; 181621-423; 181621-425; 181621-427; 181621-429; 181621-431; 181621-433; 181621-435; 181621-437; 181621-439; 181621-441; 181621-443; 181621-445; 181621-447; 181621-449; 181621-451; 181621-453; 181621-455; 181621-457; 181621-459; 181621-461; 181621-463; 181621-465; 181621-467; 181621-469; 181621-471; 181621-473; 181621-475; 181621-477; 181621-479; 181621-481; 181621-483; 181621-485; 181621-487; 181621-489; 181621-491; 181621-493; 181621-495; 181621-497; 181621-499; 181621-501; 181621-503; 181621-505; 181621-507; 181621-509; 181621-511; 181621-513; 181621-515; 181621-517; 181621-519; 181621-521; 181621-523; 181621-525; 181621-527; 181621-529; 181621-531; 181621-533; 181621-535; 181621-537; 181621-539; 181621-541; 181621-543; 181621-545; 181621-547; 181622-101; 181622-201; 181622-301; 181704-; 181706-; 181718-; 181782-; 181802-; 181877-; 181911-101; 181911-201; 181911-301; 181977-; 182069-; 182070-; 182184-; 182387-; 182728-; 182857-; 182874-; 182876-; 182877-; 182878-; 182879-; 182970-; 183117-; 183166-; 183168-; 183169-; 183170-; 183193-; 183194-; 183234-; 183328-; 183331-; 183594-; 183595-; 183596-; 183597-; 183598-; 183601-; 183778-; 183779-; 183782-; 183887-; 183972-; 184006-; 184053-; 184054-; 184056-; 184057-; 184058-; 184158-; 184255-; 184329-; 184330-; 184331-; 184332-; 184333-; 184334-; 184335-; 184418-; 184419-; 184470-; 184484-; 184488-; 184489-; 184490-; 184572-; 184586-; 184657-; 184653-; 186530-; 18N00004-1; 18N00004-13; 18N00004-19; 18N00004-21; 1NS002-008J050G; 20-00003-005; 20-00003-036; 20-00036-005; 20-00066-002; 20-00073-004; 20-00077-001; 20-00077-002; 20-00077-003; 20-00077-004; 20-00077-005; 20-00081-007; 20-00081-009; 20-00125-017; 20-00137-002; 20-00145-001; 20-00147-001; 21-00024-008; 21-00025-003; 21-00080-041; 21-00080-042; 21-00107-005; 21-00107-006; 21-00107-012; 21-00108-001; 21-00108-002; 21-00108-003; 21-00108-004; 21-00108-005; 21-00108-006; 21-00108-007; 21-00108-008; 21-00108-010; 23-00070-016; 23-00070-027; 23-00074-030; 23-00074-031; 23-00077-002; 23-00078-003; 23-00078-010; 23-00078-012; 23-00078-024; 23-00090-016; 23-00090-018; 24-00100-006; 24-00088-016; 24-00095-027; 24-00110-002; 24-00110-003; 24-00110-004; 25-00043-003; 30-00041-001; 30-00041-002; 30-00041-003; 311122-51; 311158-226; 319007-11; 32-00029-002; 32-00029-024; 39-00018-011; 40N00030-1; 40N00030-11; 40N00030-13; 40N00030-15; 40N00030-17; 40N00030-19; 40N00030-3; 40N00030-5; 40N00030-7; 40N00030-9; 40N00055-1; 40N00056-1; 40N00056-3; 40N00056-5; 41-00121-007; 41-00121-009; 41-00264-006; 41-00281-018; 41-00300-018; 41-00322-016; 41-00371-003; 41-00376-002; 41-00376-003; 41-00385-004; 41-00392-001; 41-00406-003; 45-00407-005; 45-00407-006; 45-00408-004; 45-00408-006; 45-00440-002; 46-00004-005; 46-00009-011; 46-00009-012; 46-00062-002; 46-00062-003; 46-00062-004; 46-00062-005; 46-00062-006; 46-00062-007; 46-00062-008; 46-00062-009; 46-00062-010; 46-00062-011; 46-00062-012; 46-00062-013; 46-00062-015; 46-00062-016; 46-00062-017; 46-00065-001; 46-00065-006; 46-00065-007; 48-00400-001; 48-00500-001; 49-00161-013; 49-00161-014; 49-00161-015; 49-00161-017; 49-00161-019; 49-00161-021; 49-00161-022; 49-00197-007; 49-00202-006; 49-00202-009; 49-00202-010; 49-

00205-001; 49-00228-002; 51-00323-004; 51-50016-002; 59-00027-001; 72-00364-006; 81000-1; 90-00068-028; 90-00109-007; 90-00109-035; 90-00120-001; 90-00123-025; AF1504-605; AN960C10L; AN960D10L; AN960JD10L; AN960JD4L; BACN10YC3-10; CDWG-IS61233; D38999/20MD5SN; D38999/26MD35PN; D38999/26MD5SN; EAD22-0202-00; EAD22-0203-00; EAD22-0204-00; EAD22-0205-00; EAD22-0206-00; EAD22-0207-00; IS60293-01; IS60293-04; IS60293-07; IS60293-10; IS60293-16; IS60341-01; IS60341-04; IS60341-07; IS60341-12; IS60468-04; IS60468-08; IS60631-03; IS60631-06; IS60631-09; IS60631-12; IS60631-15; IS60685-04; IS60685-05; IS61076-09; IS61233-104; IS61233-105; IS61233-110; IS61233-111; IS61233-115; IW70007-03; IW70007-05; IW70007-08; IW70033; IW70033-06; KT1067103-2; KT1067104-2; KT1067-2; KT1067844; KT1067845; KT1067847; KT1089103-22; KT1089-22-2; KT1089-9-4; KT1089-9-5; KT1091-10-1; KT1091101-8-1; KT1091101-8-2A; KT1091101-8-2B; KT1091101-8-2C; KT1091101-8-2D; KT1091101-9-1; KT1091101-9-2A; KT1091101-9-2B; KT1091101-9-2C; KT1091101-9-2D; KT1091-10-2; KT1091102-8-1; KT1091102-8-2A; KT1091102-8-2B; KT1091102-8-3; KT1091102-9-1; KT1091102-9-2A; KT1091102-9-2B; KT1091102-9-3; KT1091-10-3; KT1091-10-4; KT1091-10-5; KT1091-10-6; KT1091-11-1; KT1091-11-2; KT1091-11-3; KT1091-11-4; KT1091-11-5; KT1091-12-1; KT1091-12-2; KT1091-14-1; KT1091-14-2; KT1091-20-1; KT1091-20-2; KT1091-20-3; KT1091-4-21; KT1091-4-22; KT1091-4-30; KT1091-4-31; KT1091-5-1; KT1091-5-2; KT1091-6-1; KT1092-1-5; KT1092-1-6; KT1092-20-02; KT1092-20-03; KT1092-20-1; KT1092-20-2; KT1092-20-3; KT1092-4-21; KT1092-4-22; KT1092-4-5; KT1092-4-7; KT1092-4-8; KT1092-4-9; KT1092-5-1; KT1092-6-1; KT1092-6-2; KT1092-6-3; KT1121-1; KT1121-2; KT1121-3; KT1121-4; KT1121-5; KT1121-6; KT1122-1; KT1122-10-1; KT1122-10-2; KT1122-10-4; KT1122-1-1; KT1122-1-2; KT1122-1-3; KT1122-2; KT1122-22; KT1122-3; KT1122-4; KT1133-1; KT1133-2; KT1133-3; KT1133-4; KT1139-1; KT1140-10-1; KT1140-10-11; KT1140-10-20; KT1140-10-21; KT1140-19-1; KT1140-20-1; KT1140-20-2; KT1140-20-3; KT1140-20-4; KT1140-21-1; KT1140-21-2; KT1140-21-3; KT1140-21-4; KT1140-5-1; KT1140-5-11; KT1140-5-12; KT1140-5-13; KT1140-5-14; KT1140-5-15; KT1140-5-16; KT1140-5-20; KT1140-5-21; KT1140-5-22; KT1140-6-1; KT1140-6-13; KT1140-6-14; KT1140-6-16; KT1140-6-2; KT1140-7-1; KT1140-7-11; KT1140-7-12; KT1140-7-13; KT1140-7-14; KT1140-7-15; KT1140-9-1; KT1140-9-11; KT1140-9-12; KT1140-9-2; KT1140-9-20; KT1140-9-3; KT1141-1; KT1144-1; KT1150-1; KT1150-20; KT1150-30; KT1150-4; KT1150-50; KT1150-60; KT1150-7; KT1151-100; KT1151-101; KT1153-1; KT1153-10; KT1153-2; KT1153-20; KT1153-3; KT1153-30; KT1153-40; KT1153-50; KT1154-1; KT1154-30; KT1154-4; KT1154-50; KT1154-60; KT1154-70; KT1155-1; KT1155-2; KT1155-3; KT1155-30; KT1155-31; KT1155-4; KT1155-5; KT1155-50; KT1155-6; KT1155-60; KT1156-1; KT1156-10; KT1156-100; KT1156-130; KT1156-131; KT1156-140; KT1156-141; KT1156-150; KT1156-3; KT1156-30; KT1156-4; KT1156-50; KT1156-60; KT1156-70; KT1170808; KT1170808-24; KT1170809; KT1170809-99; KT1170810; KT1170810-99; KT1170811; KT1170811-138; KT1170811-157; KT1170811-28; KT1175-1; KT1175-2; KT1175-3; KT1175-4; KT1175-744KIT1RETRO; KT1175-744KIT2RETRO; KT1175-744KIT3RETRO; KT1175-744KIT4RETRO; KT1175-KIT1LY777RETRO; KT1175-KIT2LY777RETRO; KT1175-KIT3LY777RETRO; KT1175-KIT4LY777RETRO; KT1175-LY767RETRO-EAK; KT1176-1; KT1177-1; KT1190-1; KT1190-2; KT1191-10-1; KT1191-10-2; KT1191-10-3; KT1191-10-4; KT1191-10-5; KT1191330-1; KT1191800-1; KT1191-815-1; KT1191-815-2; KT1191-815-3; KT1191-841; KT1191-9-1; KT1191-9-2; KT1191-9-3; KT1191-9-4; KT1191-9-5; KT1191-9-6; KT1191-9-7; KT1191-9-8; KT1194-1; KT1215-1; KT1215-2; KT1215-3; KT1215-3-1; KT1235-3; KT1235305-2; KT1235305-3; KT1235305-4; KT1235305-5; KT1247-1; KT1249-1; KT1249-1-11; KT1249-1-21; KT1249-1-31; KT1249-1-41; KT1249-2; KT1249-3; KT1249-3-11; KT1249-3-21; KT1249-3-31; KT1249-3-41; KT1249-3-51; KT1250-1; KT1260-10; KT1260-11; KT1260-1-1; KT1260-12; KT1260-1-2; KT1260-13; KT1260-1-3; KT1260-14; KT1260-16; KT1260-20; KT1260-21; KT1260-2-1; KT1260-2-2; KT1260-2-3; KT1260-3-2; KT1260-3-3; KT1260-4-1; KT1260-4-2; KT1260-4-3; KT1260-5; KT1280-1; KT1280-11; KT1280-2; KT1280-3; KT1280-4; KT1280-5; KT1280-6; KT1280-7; KT1290-1-1; KT1290-2-1; KT1290-2-1-1; KT1290-3-1; KT1290-3-1-1; KT1290-3-2; KT1290-3-2-1; KT1290-4-1; KT1290-4-1-1; KT1290-5-1; KT1290-6-1; KT1290-6-1-1; KT1290-7-1; KT1290-7-1; KT1290-8-1; KT1290-8-1-1; KT1291-10-1; KT1291-10-10; KT1291-10-2; KT1291-1-1; KT1291-1-10; KT1291-1-2; KT1291-2-1; KT1291-2-10; KT1291-2-2; KT1291-2-3; KT1291-3-1; KT1291-3-10; KT1291-3-2; KT1291-4-1; KT1291-4-10; KT1291-4-2; KT1291-4-20; KT1291-4-3; KT1291-5-1; KT1291-5-10; KT1291-5-2; KT1291-5-20; KT1291-5-3; KT1291-6-1; KT1291-6-10; KT1291-6-2; KT1291-6-20; KT1291-7-1; KT1291-7-10; KT1291-7-2; KT1291-7-20; KT1291-8-1; KT1291-8-10; KT1291-8-2; KT1291-8-20; KT1291-9-1; KT1291-9-10; KT1291-9-2; KT1292501; KT1292501-1; KT1292506-1-10; KT1292506-1-11; KT1292506-1-12; KT1292506-1-13; KT1292506-1-14; KT1292506-1-15; KT1292506-1-16; KT1292506-1-17; KT1292506-1-18; KT1292506-1-19; KT1292506-1-2; KT1292506-1-3; KT1292506-1-4; KT1292506-1-5; KT1292506-1-6; KT1292506-1-7; KT1292506-1-8; KT1292506-1-9; KT1294-2-1; KT1294-2-2; KT1295-1; KT1295305-1; KT1295513; KT1295519; KT1295-8; KT1296-1-1; KT1296-1-2; KT1296-1-3; KT1296-2; KT1296-3; KT1296-4; KT1299-1; KT1299-2; KT1299-3; KT1299-4; KT1299-5; KT1299-6; KT1299-7; KT1300-1-1; KT1300-1-2; KT1300-1-3; KT1300-1-4; KT1300-1-5; KT1300-2-1; KT1300-2-2; KT1300-2-3; KT1300-2-30; KT1300-2-31; KT1300-2-4; KT1300-2-41; KT1300-2-42; KT1300-2-5; KT1300-3-1; KT1300-3-10; KT1300-3-3; KT1300-3-30; KT1300-3-31; KT1300-3-4; KT1300-3-5; KT1300-4-2; KT1300-4-3; KT1300-4-4; KT1300-4-5; KT1302-1-1; KT1302-1-2; KT1302-1-3; KT1302-2-1; KT1303-12-1; KT1303-166-1; KT1303-166-2; KT1303-361; KT1310-1-1; KT1310-1-2; KT1310-1-3; KT1310-2-2; KT1310-2-3; KT1311-1; KT1311-3; KT1311-4; KT1311-5; KT1315501-1; KT1319-1-1; KT1319-1-2; KT1319-1-3; KT1319-2-1; KT1319-2-2; KT1319-2-3; KT1319-3-1; KT1319-3-2; KT1319-3-3; KT1319-4-1; KT1319-4-2; KT1319-4-3; KT1319-5-1; KT1319-5-2; KT1319-6-1; KT1319-6-2; KT1319-6-3; KT1319-6-4; KT1319-6-5; KT1325-21-1; KT1327501; KT1327531; KT1518-1; KT1518-10; KT1518-11; KT1518-2; KT1518-3; KT1518-4; KT1518-5; KT1518-6; KT1518-7; KT1518-8; KT1518-9; KT1527301-1; M22759/34-22-0; M83723/60-214AN; M85528/2-12-A; MS20426AD3-4; MS20470AD4-6; MS20470AD5-7; MS20470D6-11; MS20470D6-7; MS20470D6-9; MS20470D8-12; MS21042L04; MS21042L08; MS21042L3; MS21059L3; MS24693-C27; MS3367-4-9; MS3367-7-2; MS3367-7-5; MS3367-7-6; MS3367-7-9; MS3476L12-10SW; MS35338-43; MS35650-305T;

MS51957-17; NAS1149D0316H; NAS1149D0332J; NAS1149D0332K; NAS1149DN432K; NAS1149DN816H; NAS1149DN832J; NAS1801-04-6; NAS1801-08-7; NAS1801-3-10; NAS1801-3-6; NAS1801-3-7; NAS1801-3-9; NAS1836-3-11; NAS514P1032-7P; NAS602-8P; NAS623-2-2; RD-FA3621-01; RD-FA3622-01; RD-FA3622-02; RD-FA3622-03; RD-FA3632-01; RD-FA3652-01; RD-KM6097-; RD-KM6100-; RD-KM6101-; RD-KM6188-; RD-KM6325-; RD-KM6326-

\* \* \*

# ATTACHMENT 5

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of the Application of LUFTHANSA TECHNIK AG, Petitioner, for an Order Pursuant to 28 U.S.C. § 1782 to Take Discovery, Pursuant to the Federal Rules of Civil Procedure, of Respondent Thales, Avionics, Inc., for Use in Foreign Proceedings. | ) No. 8:19-mc-00016-UA-KES<br>) [~~PROPOSED~~] REVISED PROTECTIVE<br>) ORDER<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

.

WHEREAS the disputes between these parties arise in a highly competitive industry in which constant innovation and research are necessary, that disclosure of material relating to innovation and research could cause decided competitive harm or unfair competitive advantage, and that therefore good cause exists for entry of a protective order regarding confidentiality of trade secret or nonpublic technical, commercial, financial, personal, or business information that is expected to be produced or provided in the course of discovery;

WHEREAS the applicant in this action, Lufthansa Technik AG ("Lufthansa"), recognizes that in response to its requests for discovery under 28 U.S.C. § 1782, Respondent, Thales Avionics, Inc. ("Thales"), may be required to disclose such confidential or sensitive business information;

WHEREAS such sensitive information should be treated as confidential, but not restricted in such a way as would impede Lufthansa's ability to use the discovered information to aid of the aforementioned German proceeding or Contemplated Proceedings;

NOW, THEREFORE, it is hereby ordered as follows:

**Definitions**

As used in this Protective Order, the following definitions apply.

1.      The terms **"Thales"** and **"Respondent"** refer to Thales Avionics, Inc.

2.      The terms **"Lufthansa"** and **"Petitioner"** refer to Lufthansa Technik AG.

3.      The terms **"AES"** refer to Astronics Advanced Electronic Systems Corp.

4.      The term **"German Proceedings"** refers to Civil Law Proceeding No. 7 O 289/10, before the Mannheim Regional Court, and any appeals therefrom.

5.      The term **"Contemplated Proceedings"** refers to contemplated or pending proceedings relating to the rights of Lufthansa arising out of any parts or foreign counterparts of

European Patent No. EP 881 145 that have been or are being considered for filing in Germany, France, Spain, the United Kingdom and/or Japan other than the German Proceedings.

6.    The term "**Action**" refers to Lufthansa's § 1782 Petition to this Court.

7.    The term "**Confidential Information**" refers to information produced by Thales and designated by Thales as "ATTORNEYS EYES ONLY" under the terms of this Protective Order.

8.    The term "**Privileged Information**" refers to information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity.

**Method of Designating Confidential Information**

9.    Designation of Confidential Information should be made by stamping, placing, or affixing on the document in a manner which will not interfere with its legibility the phrase "ATTORNEY'S EYES ONLY."

10.    Information should only be designated as Confidential Information when Thales in good faith believes that the information contains trade secrets or nonpublic technical, commercial, financial, personal, or business information.

11.    Except for documents produced for inspection at Thales's facilities or its counsel's offices, the designation of Confidential Information should be made prior to, or contemporaneously with, the production or disclosure of that information.

12.    In the event that documents are produced for inspection at Thales's facilities or its counsel's offices, such documents may be produced for inspection before being marked "ATTORNEY'S EYES ONLY." However, once specific documents have been designated for

copying, any documents containing Confidential Information should then be marked "ATTORNEY'S EYES ONLY" before delivery to Lufthansa.

13.　　To the extent that depositions (the term "depositions," as used in this document, also refers to any interviews conducted pursuant to Court order) are taken, Confidential Information disclosed during the deposition may be designated by notice, but only if it is designated as "ATTORNEY'S EYES ONLY" on the record when the deposition is taken. If a party discovers after the conclusion of a deposition that it has inadvertently failed to designate the deposition testimony as "ATTORNEY'S EYES ONLY," it may designate the testimony as such by writing to counsel for the opposing parties within thirty (30) days after the conclusion of the deposition. Prior to the expiration of the thirty (30) day period, the parties shall treat the entire deposition testimony, transcript, and exhibits as if they had been designated as "ATTORNEY'S EYES ONLY."

**Inadvertent Disclosure of Confidential Information or Privileged Information**

14.　　If Thales discovers after the production of a document that it has inadvertently failed to designate the document as "ATTORNEY'S EYES ONLY," it may within thirty (30) days after production give written notice to Lufthansa that the document contains confidential material, whereupon (i) the Lufthansa shall, to the extent possible, retrieve all copies of the inadvertently produced document from any person or persons in possession of such copies and return them to Thales; (ii) Thales will simultaneously provide copies of the same document with each page marked "ATTORNEY'S EYES ONLY," and (iii) thereafter the parties shall treat such document as "ATTORNEY'S EYES ONLY."

15.     If Lufthansa believes that Thales may have inadvertently produced Privileged Information, they shall notify Thales's counsel of the potential inadvertent production within 5 business days and shall immediately sequester the potentially Privileged Information.

16.     Thales's inadvertent production of Privileged Information shall not constitute a waiver of, and shall not otherwise prejudice any claim that such material or related material is privileged, protected as attorney work product, or is otherwise immune from discovery, provided that Thales notifies Lufthansa in writing promptly after discovery of such inadvertent production. Such inadvertently produced documents and things and all copies thereof shall promptly be returned to Thales upon request. After a request for the return of the inadvertently produced documents and things is made by Thales, no use shall be made of such documents and things other than to challenge the propriety of the asserted privilege or immunity, nor shall they be shown or disclosed to any person who had not already been given access to them before receipt of the request to return them. No demonstration or proof of error, inadvertence, excusable neglect, or absence of negligence shall be required of Thales in order to avail itself of the protection and provisions of this paragraph.

**<u>Handling and Disclosure of Confidential Information</u>**

17.     No person shall disclose any Confidential Information under this Protective Order to any other person, except as follows:

17.1    Disclosure may be made to counsel of record in this Action, counsel in the German Proceedings, or counsel involved in the Contemplated Proceedings who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), as well as employees of such counsel to whom it is reasonably necessary to disclose the information for this litigation.

17.2    Disclosure may be made only to Olaf Johannsen, as in-house counsel for Lufthansa, provided that he has signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A).Further, no Confidential Information will be transmitted to or stored on Lufthansa's servers, computers, email or document systems, nor shall Lufthansa have possession of any electronic, paper, or other copy of Confidential Information, except that counsel of record in the German Proceedings or Contemplated Proceedings may (i) carry with them Confidential Information onto Lufthansa premises for the purpose of permitting review of the Confidential Information by Mr. Johannsen in the presence of counsel of record in the German Proceedings or Contemplated Proceedings or (ii) may provide secure, electronic access through web-based technology to Mr. Johannsen so that he may review, but not download, Confidential Information along with counsel of record in the German Proceedings or Contemplated Proceedings.

17.3    Disclosure may be made to court reporters engaged for depositions and those persons, if any, specifically engaged for the limited purpose of making photocopies of documents. Prior to disclosure to any such court reporter or person engaged in making photocopies of documents, such person must agree to be bound by the terms of this Protective Order.

17.4    Disclosure may be made to consultants, investigators, or experts (hereinafter referred to collectively as "experts") who are engaged to assist in the preparation and trial of the German Proceedings or Contemplated Proceedings. Any such expert shall not be an employee of a party. Any such expert shall be identified in writing in a notice that is received by counsel for the producing party at least fifteen (15) business days in advance of any disclosure. If, within fifteen (15) business days after such notice is received, an objection is filed by Thales in this Court to such disclosure, then no such disclosure shall be made without further order of this

Court. Before disclosure is made to any expert, he or she shall sign the "Acknowledgment and Agreement to Be Bound" (Exhibit A) indicating (a) that he or she has read and understands this Protective Order; and (b) that he or she shall be bound by the terms of the Protective Order.

17.5    Disclosure may be made to deponents and their counsel during depositions to the extent there are depositions in this Action, provided that the party making the disclosure shall give the producing party notice at least ten (10) business days in advance of such disclosure. If, within ten (10) business days after such notice is received, an objection is filed by Thales in this Court to such disclosure, then no such disclosure shall be made without further order of this Court.  Notwithstanding this provision, nothing shall prevent disclosure of Thales-produced documents during depositions of Thales' witnesses or employees.

17.6    Disclosure may be made to a court in the German Proceedings or Contemplated Proceedings, provided that the party making the disclosure shall give the producing party notice at least fifteen (15) business days in advance of such disclosure, except for contemplated disclosures of 20 or fewer pages, for which only five (5) business days advance notice is required. For disclosures of more than 20 pages, if, within fifteen (15) business days after such notice is received, the producing party does not file a motion with this court objecting to the disclosure and showing good cause as to why the information shall be withheld, then such disclosure shall be made without further order of this court. For disclosures of 20 or fewer pages, the producing party may object to the disclosure within (5) business days.  However, if within an additional (5) days after objecting, the producing party does not file a motion with this court objecting to the disclosure and showing good cause as to why the information shall be withheld, then such disclosure shall be made without further order of the court.  If this Court determines that there is good cause for keeping the documents or other information sought to be disclosed

confidential in the German Proceedings or Contemplated Proceedings, then the party seeking to make the disclosure in the German Proceedings or Contemplated Proceedings may not do so unless it obtains specific authorization, in advance, from this Court to do so. In evaluating such a request, this Court will consider the extent to which additional protections (beyond those contained herein) are necessary to insure confidentiality for the documents or other information in the German Proceedings or Contemplated Proceedings.

17.7    Disclosure may be made to this Court, its clerks and staff by filing Confidential Information (or any substantive reference to it in any other submission) in the manner consistent with this Court's Local Rules for applying to file documents under seal.

17.8    Notwithstanding the notice requirement of 17.4, 17.5, and 17.6 above, counsel of record in this action may request that Thales agree to abbreviate the notice period, to accommodate currently urgent or unforeseeably exigent deadlines in the German Proceedings or Contemplated Proceedings, and Thales will attempt to accommodate that request.

17.9    Disclosure may be made to independent litigation support services or other vendors preapproved by all parties and which agree to the provisions of this Protective Order and any other necessary provisions to assure that the documents and information be held in the strictest of confidence.

18.    Except as provided in Paragraph 18, counsel for the parties (in the German Proceedings, Contemplated Proceedings, and this litigation) must keep all Confidential Information secure within their exclusive possession. Each person to whom Confidential Information is disclosed shall be informed of the terms of this Protective Order and agree to be bound by it before disclosure to such person of any such information.

19.     All copies, duplicates, extracts, summaries, or descriptions (hereinafter referred to collectively as "copies") of Confidential Information or any portion thereof, must be immediately affixed with the word "ATTORNEY'S EYES ONLY" if that word does not already appear.

20.     To the extent that any transcripts of depositions, exhibits, or any other papers filed or to be filed with this Court in this litigation reveal or tend to reveal Confidential Information, these papers or any portion thereof must be filed under seal in accordance with this Court's procedures for filing under seal.

21.     This Protective Order shall be applicable to (i) all Confidential Information, whether produced by Thales or any other party, non-party, or third party, pursuant to deposition notice, requests for production of documents, subpoenas, or other discovery requests, whether formal or informal, in connection with this Action, and (2) all Confidential Information provided by any party in connection with any evidentiary hearings or other proceedings conducted during the course of this Action.

22.     Compliance with the terms of this Protective Order shall not be deemed an admission that any documents are admissible in evidence and shall not constitute a waiver of objections concerning further use of the documents. Entering into, agreeing to, and/or complying with the terms of this Protective Order shall not (a) operate as an admission by any party that any document or material designated by any other party as "ATTORNEY'S EYES ONLY" contains or reflects proprietary or other confidential matter, or (b) prejudice in any way the right of any party to seek determination by the Court on notice of whether any particular document or material should be designated "ATTORNEY'S EYES ONLY."

23.     If another court or administrative agency subpoenas or orders production of any discovery materials that a party has obtained under the terms of this Protective Order, such party

shall promptly notify the party who produced the materials of the pendency of such subpoenas or order, and shall allow the party who produced the materials a reasonable period of time to oppose or quash the subpoena or order before providing the materials to the person or entity seeking them. Compliance with any subpoena or order shall not be deemed a violation of this Protective Order absent the entry, in advance of the response date for the subpoena or order, of a supplemental protective order barring disclosure of the information, and communication of such an order to counsel for the person or entity under subpoena or order.

**Destruction or Return of Confidential Information**

24.     Within thirty (30) days of the conclusion of the last of the German Proceedings and Contemplated Proceedings, including any and all appeals, all Confidential Information not received in evidence must be returned to Thales, or certified to have been destroyed. The certification shall be filed with the Court by the receiving party's counsel of record in this Action.

**Miscellaneous Provisions**

25.     A designation of "ATTORNEY'S EYES ONLY" may be challenged by Lufthansa. If a challenge is made, Thales bears the burden of showing that the designation is appropriate. A party moving to modify this Protective Order to provide for greater restrictions on disclosure must show that such a modification is necessary to protect the movant's interests.

26.     In the event that any Confidential Information is submitted as evidence in the German Proceedings or Contemplated Proceedings, access will be limited to those persons identified in Paragraph 18.

27.     Until further order, this Court shall retain jurisdiction of this matter for the purpose of enforcing and/or modifying, altering, and/or amending the scope of this Protective Order, which shall continue to be binding after the conclusion of this Action.

28. Lufthansa shall assure compliance with this Protective Order by its representatives and Lufthansa shall be responsible for any violation of this Protective Order by its counsel. The parties reserve the right to seek any and all remedies available under applicable law in the event of a violation of this Protective Order.

Entered this 23rd day of September, 2019.

_Karen E. Scott_

Hon. Karen E. Scott
United States Magistrate Judge

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

In the Matter of the Application of    ) No.
                                       )
LUFTHANSA TECHNIK AG,                  _____
Petitioner, for an Order Pursuant to 28 )
U.S.C. § 1782 to Take Discovery,       )
                                       )
Pursuant to the Federal Rules of Civil )
Procedure, of Respondent Thales,       )
Avionics, Inc., for Use in Foreign     )
Proceedings.                           )
                                       )

## **CONFIDENTIALITY STATEMENT**

UNDERTAKING OF

_____

STATE OF                    · )
                              )  ss.
COUNTY OF                   · )


I, _____, being duly sworn, state that:

My address is _____.

My present employer is

_____.

I have received a copy of the protective order in this case signed by district judge

_____ on _____.

I have carefully read and understand the provisions of the protective order.

I will comply with all of the provisions of the protective order.

I will hold in confidence, and not disclose to anyone not qualified under the protective order, any Confidential Information or information derived therefrom, including words substance summaries, abstracts or indices of Confidential Information disclosed to me.

I shall return all materials containing Confidential Information and summaries, abstracts, and indices thereof, and copies thereof, which come into my possession, and document or things which I have prepared relating thereto, to counsel for the party by whom I am employed, retained, or otherwise designated as a qualified person.

I hereby submit to the jurisdiction of this court for the purpose of enforcement of the protective order in this case.

Dated: _____

_____
Signature

113098496

Lawrence D. Rosenberg
(admitted *pro hac vice*)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001.2113
Telephone: +1.202.879.3939
Facsimile: +1.202.626.1700
ldrosenberg@jonesday.com

William T. O'Brien
(admitted *pro hac vice*)
william.obrien@dentons.com
DANIEL MORRIS
(admitted *pro hac vice*)
danielmorris@eversheds-
sutherland.com
EVERSHEDS SUTHERLAND (US)
LLP
700 6th Street, N.W., Suite 700
Washington, DC 20001
Telephone: (202) 220-8348
Facsimile: (202) 637-3593

Alexis Adian Smith (SBN 274429)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071.2452
Telephone: +1.213.489.3939
Facsimile: +1.213.243.2539
asmith@jonesday.com

RONALD D. KENT (Bar No.
100717 )
ronald.kent@dentons.com
DENTONS US LLP
4675 MacArthur Court, Suite 1250
Newport Beach, CA 92660
Telephone: (949) 732-3700
Facsimile: (949) 732-3739

Attorneys for Petitioner
Lufthansa Technik AG

Attorneys for Respondent Thales
Avionics, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

In the Matter of the Application of
LUFTHANSA TECHNIK AG,
Petitioner, for an Order Pursuant to 28
U.S.C. § 1782 to Take Discovery,
Pursuant to the Federal Rules of Civil
Procedure, of Respondent Thales
Avionics, Inc., for Use in Foreign
Proceedings

Case No. 8:19-mc-00016-UA-KES

**STIPULATION AND ORDER
AMENDING PROTECTIVE
ORDER**

Hon. Judge Karen E. Scott
Courtroom: 6D

The above-captioned parties, through their undersigned counsel, stipulate that Section 17.2 of the Revised Protective Order (Dkt. #59) shall be amended to state as follows:

> 17.2   Disclosure may be made only to Thomas Terbeck, as in-house counsel for Lufthansa, provided that he has signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A).  Further, no Confidential Information will be transmitted to or stored on Lufthansa's servers, computers, email or document systems, nor shall Lufthansa have possession of any electronic, paper, or other copy of Confidential Information, except that counsel of record in the German Proceedings or Contemplated Proceedings may (i) carry with them Confidential Information onto Lufthansa premises for the purpose of permitting review of the Confidential Information by Thomas Terbeck in the presence of counsel of record in the German Proceedings or Contemplated Proceedings or (ii) may provide secure, electronic access through web-based technology to Thomas Terbeck so that they may review, but not download, Confidential Information along with counsel of record in the German Proceedings or Contemplated Proceedings.

DATED this May 12, 2021

By: */s/ Alexis A. Smith*
_____

Lawrence D. Rosenberg
(admitted *pro hac vice*)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001.2113
Telephone:    +1.202.879.3939
Facsimile:    +1.202.626.1700
ldrosenberg@jonesday.com

Alexis A. Smith (SBN 274429)
JONES DAY
555 South Flower Street, Fiftieth Floor
Los Angeles, CA 90071.2452
Telephone:    +1.213.489.3939
Facsimile:    +1.213.243.2539
asmith@jonesday.com

Attorneys for Petitioner
LUFTHANSA TECHNIK AG

By: */s/ Daniel Morris*
_____

Ronald D. Kent (SBN 100717)

1  ronald.kent@dentons.com
   DENTONS US LLP
2  4675 MacArthur Court, Suite 1250
   Newport Beach, California 92660
3  Telephone: (949) 732-3700
   Facsimile: (949) 732-3739
4
   William T. O'Brien
5  (admitted *pro hac vice*)
   william.obrien@dentons.com
6  DANIEL MORRIS (admitted *pro hac vice*)
   danielmorris@eversheds-sutherland.com
7  DENTONS US LLP
   1900 K Street, N.W.
8  Washington, D.C. 20006
   Telephone: (202) 496-7500
9  Facsimile: (202) 496-7756

10 Attorneys for Respondent
   THALES AVIONICS, INC.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## ATTESTATION

In accordance with Local Rule 5-4.3.4(a)(2), I attest that concurrence in the filing of this document has been obtained from all other signatories listed and on whose behalf this filing is submitted.

Dated: May 12, 2021                    JONES DAY


                                       By: /s/ Alexis A. Smith
                                       _____
                                       Alexis A. Smith


                                       Attorneys for Petitioner
                                       LUFTHANSA TECHNIK AG

## ORDER

It is so ordered.


Dated: <u>May 13, 2021</u>


                                       _Karen E. Scott_

                                       Hon. Karen E. Scott

                                       U.S. Magistrate Judge

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of the Application of LUFTHANSA TECHNIK AG, Petitioner, for an Order Pursuant to 28 U.S.C. § 1782 to Take Discovery, Pursuant to the Federal Rules of Civil Procedure, of Respondent Thales Avionics, Inc., for Use in Foreign Proceedings | Case No. <br><br> PROPOSED PROTECTIVE ORDER |

WHEREAS the disputes between these parties arise in a highly competitive industry in which constant innovation and research are necessary, that disclosure of material relating to innovation and research could cause decided competitive harm or unfair competitive advantage, and that therefore good cause exists for entry of a protective order regarding confidentiality of trade secret or nonpublic technical, commercial, financial, personal, or business information that is expected to be produced or provided in the course of discovery;

WHEREAS the applicant in this action, Lufthansa Technik AG ("Lufthansa"), recognizes that in response to its requests for discovery under 28 U.S.C. § 1782, Respondent, Thales Avionics, Inc. ("Thales"), may be required to disclose such confidential or sensitive business information;

WHEREAS such sensitive information should be treated as confidential, but not restricted in such a way as would impede Lufthansa's ability to use the discovered information to aid of the aforementioned German proceeding or Contemplated Proceedings;

NOW, THEREFORE, it is hereby ordered as follows:

**Definitions**

As used in this Protective Order, the following definitions apply.

1.      The terms "**Thales**" and "**Respondent**" refer to Thales Avionics, Inc.

2.      The terms "**Lufthansa**" and "**Petitioner**" refer to Lufthansa Technik AG.

3.      The terms "**AES**" refer to Astronics Advanced Electronic Systems Corp.

4.      The term "**German Proceedings**" refers to Civil Law Proceeding No. 7 O 289/10, before the Mannheim Regional Court, and any appeals therefrom.

5.      The term "**Contemplated Proceedings**" refers to contemplated or pending proceedings relating to the rights of Lufthansa arising out of any parts or foreign counterparts of European Patent No. EP 881 145 that have been or are being

considered for filing in Germany, France, Spain, the United Kingdom and/or Japan other than the German Proceedings.

6.      The term "**Action**" refers to Lufthansa's § 1782 Petition to this Court.

7.      The term "**Confidential Information**" refers to information produced by Thales and designated by Thales as "ATTORNEYS EYES ONLY" under the terms of this Protective Order.

8.      The term "**Privileged Information**" refers to information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity.

**<u>Method of Designating Confidential Information</u>**

9.      Designation of Confidential Information should be made by stamping, placing, or affixing on the document in a manner which will not interfere with its legibility the phrase "ATTORNEY'S EYES ONLY."

10.     Information should only be designated as Confidential Information when Thales in good faith believes that the information contains trade secrets or nonpublic technical, commercial, financial, personal, or business information.

11.     Except for documents produced for inspection at Thales's facilities or its counsel's offices, the designation of Confidential Information should be made prior to, or contemporaneously with, the production or disclosure of that information.

12.     In the event that documents are produced for inspection at Thales's facilities or its counsel's offices, such documents may be produced for inspection before being marked "ATTORNEY'S EYES ONLY." However, once specific documents have been designated for copying, any documents containing Confidential Information should then be marked "ATTORNEY'S EYES ONLY" before delivery to Lufthansa.

13.     To the extent that depositions (the term "depositions," as used in this document, also refers to any interviews conducted pursuant to Court order) are

taken, Confidential Information disclosed during the deposition may be designated by notice, but only if it is designated as "ATTORNEY'S EYES ONLY" on the record when the deposition is taken. If a party discovers after the conclusion of a deposition that it has inadvertently failed to designate the deposition testimony as "ATTORNEY'S EYES ONLY," it may designate the testimony as such by writing to counsel for the opposing parties within thirty (30) days after the conclusion of the deposition. Prior to the expiration of the thirty (30) day period, the parties shall treat the entire deposition testimony, transcript, and exhibits as if they had been designated as "ATTORNEY'S EYES ONLY."

**Inadvertent Disclosure of Confidential Information or Privileged Information**

14.    If Thales discovers after the production of a document that it has inadvertently failed to designate the document as "ATTORNEY'S EYES ONLY," it may within thirty (30) days after production give written notice to Lufthansa that the document contains confidential material, whereupon (i) the Lufthansa shall, to the extent possible, retrieve all copies of the inadvertently produced document from any person or persons in possession of such copies and return them to Thales; (ii) Thales will simultaneously provide copies of the same document with each page marked "ATTORNEY'S EYES ONLY," and (iii) thereafter the parties shall treat such document as "ATTORNEY'S EYES ONLY."

15.    If Lufthansa believes that Thales may have inadvertently produced Privileged Information, they shall notify Thales's counsel of the potential inadvertent production within 5 business days and shall immediately sequester the potentially Privileged Information.

16.    Thales's inadvertent production of Privileged Information shall not constitute a waiver of, and shall not otherwise prejudice any claim that such material or related material is privileged, protected as attorney work product, or is otherwise immune from discovery, provided that Thales notifies Lufthansa in writing promptly after discovery of such inadvertent production. Such inadvertently

produced documents and things and all copies thereof shall promptly be returned to Thales upon request. After a request for the return of the inadvertently produced documents and things is made by Thales, no use shall be made of such documents and things other than to challenge the propriety of the asserted privilege or immunity, nor shall they be shown or disclosed to any person who had not already been given access to them before receipt of the request to return them. No demonstration or proof of error, inadvertence, excusable neglect, or absence of negligence shall be required of Thales in order to avail itself of the protection and provisions of this paragraph.

**Handling and Disclosure of Confidential Information**

17.     No person shall disclose any Confidential Information under this Protective Order to any other person, except as follows:

17.1   Disclosure may be made to counsel of record in this Action, counsel in the German Proceedings, or counsel involved in the Contemplated Proceedings who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), as well as employees of such counsel to whom it is reasonably necessary to disclose the information for this litigation.

17.2   Disclosure may be made only to Thomas Terbeck, as in-house counsel for Lufthansa, provided that he has signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A). Further, no Confidential Information will be transmitted to or stored on Lufthansa's servers, computers, email or document systems, nor shall Lufthansa have possession of any electronic, paper, or other copy of Confidential Information, except that counsel of record in the German Proceedings or Contemplated Proceedings may (i) carry with them Confidential Information onto Lufthansa premises for the purpose of permitting review of the Confidential Information by Thomas Terbeck in the presence of counsel of record in the German Proceedings or Contemplated Proceedings or (ii) may provide secure, electronic access through web-based technology to Thomas Terbeck so that he may review,

1  but not download, Confidential Information along with counsel of record in the

2  German Proceedings or Contemplated Proceedings.

3       17.3   Disclosure may be made to court reporters engaged for depositions and

4  those persons, if any, specifically engaged for the limited purpose of making

5  photocopies of documents. Prior to disclosure to any such court reporter or person

6  engaged in making photocopies of documents, such person must agree to be bound

7  by the terms of this Protective Order.

8       17.4   Disclosure may be made to consultants, investigators, or experts

9  (hereinafter referred to collectively as "experts") who are engaged to assist in the

10  preparation and trial of the German Proceedings or Contemplated Proceedings. Any

11  such expert shall not be an employee of a party. Any such expert shall be identified

12  in writing in a notice that is received by counsel for the producing party at least

13  fifteen (15) business days in advance of any disclosure. If, within fifteen (15)

14  business days after such notice is received, an objection is filed by Thales in this

15  Court to such disclosure, then no such disclosure shall be made without further

16  order of this Court. Before disclosure is made to any expert, he or she shall sign the

17  "Acknowledgment and Agreement to Be Bound" (Exhibit A) indicating (a) that he

18  or she has read and understands this Protective Order; and (b) that he or she shall be

19  bound by the terms of the Protective Order.

20       17.5   Disclosure may be made to deponents and their counsel during

21  depositions to the extent there are depositions in this Action, provided that the party

22  making the disclosure shall give the producing party notice at least ten (10)

23  business days in advance of such disclosure. If, within ten (10) business days after

24  such notice is received, an objection is filed by Thales in this Court to such

25  disclosure, then no such disclosure shall be made without further order of this

26  Court. Notwithstanding this provision, nothing shall prevent disclosure of Thales-

27  produced documents during depositions of Thales' witnesses or employees.

28       17.6   Disclosure may be made to a court in the German Proceedings or

PROTECTIVE ORDER - 6

Contemplated Proceedings, provided that the party making the disclosure shall give the producing party notice at least fifteen (15) business days in advance of such disclosure, except for contemplated disclosures of 20 or fewer pages, for which only five (5) business days advance notice is required. For disclosures of more than 20 pages, if, within fifteen (15) business days after such notice is received, the producing party does not file a motion with this court objecting to the disclosure and showing good cause as to why the information shall be withheld, then such disclosure shall be made without further order of this court. For disclosures of 20 or fewer pages, the producing party may object to the disclosure within (5) business days. However, if within an additional (5) days after objecting, the producing party does not file a motion with this court objecting to the disclosure and showing good cause as to why the information shall be withheld, then such disclosure shall be made without further order of the court. If this Court determines that there is good cause for keeping the documents or other information sought to be disclosed confidential in the German Proceedings or Contemplated Proceedings, then the party seeking to make the disclosure in the German Proceedings or Contemplated Proceedings may not do so unless it obtains specific authorization, in advance, from this Court to do so. In evaluating such a request, this Court will consider the extent to which additional protections (beyond those contained herein) are necessary to insure confidentiality for the documents or other information in the German Proceedings or Contemplated Proceedings.

17.7   Disclosure may be made to this Court, its clerks and staff by filing Confidential Information (or any substantive reference to it in any other submission) in the manner consistent with this Court's Local Rules for applying to file documents under seal.

17.8   Notwithstanding the notice requirement of 17.4, 17.5, and 17.6 above, counsel of record in this action may request that Thales agree to abbreviate the notice period, to accommodate currently urgent or unforeseeably exigent deadlines

in the German Proceedings or Contemplated Proceedings, and Thales will attempt to accommodate that request.

17.9   Disclosure may be made to independent litigation support services or other vendors preapproved by all parties and which agree to the provisions of this Protective Order and any other necessary provisions to assure that the documents and information be held in the strictest of confidence.

18.     Except as provided in Paragraph 18, counsel for the parties (in the German Proceedings, Contemplated Proceedings, and this litigation) must keep all Confidential Information secure within their exclusive possession. Each person to whom Confidential Information is disclosed shall be informed of the terms of this Protective Order and agree to be bound by it before disclosure to such person of any such information.

19.     All copies, duplicates, extracts, summaries, or descriptions (hereinafter referred to collectively as "copies") of Confidential Information or any portion thereof, must be immediately affixed with the word "ATTORNEY'S EYES ONLY" if that word does not already appear.

20.     To the extent that any transcripts of depositions, exhibits, or any other papers filed or to be filed with this Court in this litigation reveal or tend to reveal Confidential Information, these papers or any portion thereof must be filed under seal in accordance with this Court's procedures for filing under seal.

21.     This Protective Order shall be applicable to (i) all Confidential Information, whether produced by Thales or any other party, non-party, or third party, pursuant to deposition notice, requests for production of documents, subpoenas, or other discovery requests, whether formal or informal, in connection with this Action, and (2) all Confidential Information provided by any party in connection with any evidentiary hearings or other proceedings conducted during the course of this Action.

22.     Compliance with the terms of this Protective Order shall not be

PROTECTIVE ORDER - 8

deemed an admission that any documents are admissible in evidence and shall not constitute a waiver of objections concerning further use of the documents. Entering into, agreeing to, and/or complying with the terms of this Protective Order shall not (a) operate as an admission by any party that any document or material designated by any other party as "ATTORNEY'S EYES ONLY" contains or reflects proprietary or other confidential matter, or (b) prejudice in any way the right of any party to seek determination by the Court on notice of whether any particular document or material should be designated "ATTORNEY'S EYES ONLY."

23.     If another court or administrative agency subpoenas or orders production of any discovery materials that a party has obtained under the terms of this Protective Order, such party shall promptly notify the party who produced the materials of the pendency of such subpoenas or order, and shall allow the party who produced the materials a reasonable period of time to oppose or quash the subpoena or order before providing the materials to the person or entity seeking them. Compliance with any subpoena or order shall not be deemed a violation of this Protective Order absent the entry, in advance of the response date for the subpoena or order, of a supplemental protective order barring disclosure of the information, and communication of such an order to counsel for the person or entity under subpoena or order.

**Destruction or Return of Confidential Information**

24.     Within thirty (30) days of the conclusion of the last of the German Proceedings and Contemplated Proceedings, including any and all appeals, all Confidential Information not received in evidence must be returned to Thales, or certified to have been destroyed. The certification shall be filed with the Court by the receiving party's counsel of record in this Action.

**Miscellaneous Provisions**

25.     A designation of "ATTORNEY'S EYES ONLY" may be challenged by Lufthansa. If a challenge is made, Thales bears the burden of showing that the

designation is appropriate. A party moving to modify this Protective Order to provide for greater restrictions on disclosure must show that such a modification is necessary to protect the movant's interests.

26.     In the event that any Confidential Information is submitted as evidence in the German Proceedings or Contemplated Proceedings, access will be limited to those persons identified in Paragraph 18.

27.     Until further order, this Court shall retain jurisdiction of this matter for the purpose of enforcing and/or modifying, altering, and/or amending the scope of this Protective Order, which shall continue to be binding after the conclusion of this Action.

28.     Lufthansa shall assure compliance with this Protective Order by its representatives and Lufthansa shall be responsible for any violation of this Protective Order by its counsel. The parties reserve the right to seek any and all remedies available under applicable law in the event of a violation of this Protective Order

Entered this ____ day of _____, 2022.


_____

United States District Court Judge

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

In the Matter of the Application of

Case No.

LUFTHANSA TECHNIK AG,
Petitioner, for an Order Pursuant to 28
U.S.C. § 1782 to Take Discovery,

Pursuant to the Federal Rules of Civil
Procedure, of Respondent Thales
Avionics, Inc., for Use in Foreign
Proceedings

## **CONFIDENTIALITY STATEMENT**

UNDERTAKING OF

_____

STATE OF                          )
                                  ) ss.
COUNTY OF                         )

I, _____, being duly sworn, state that:

My address is _____.

My present employer is

_____.

My present occupation or job description is

_____.

I have received a copy of the protective order in this case signed by district

judge _____ on _____.

I have carefully read and understand the provisions of the protective order.

I will comply with all of the provisions of the protective order.

I will hold in confidence, and not disclose to anyone not qualified under the

protective order, any Confidential Information or information derived therefrom,

PROTECTIVE ORDER - 11

including words substance summaries, abstracts or indices of Confidential Information disclosed to me.

I shall return all materials containing Confidential Information and summaries, abstracts, and indices thereof, and copies thereof, which come into my possession, and document or things which I have prepared relating thereto, to counsel for the party by whom I am employed, retained, or otherwise designated as a qualified person.

I hereby submit to the jurisdiction of this court for the purpose of enforcement of the protective order in this case.

Dated:  _____          _____

                                                                Signature

1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| In the Matter of the Application of LUFTHANSA TECHNIK AG, Petitioner, for an Order Pursuant to 28 U.S.C. § 1782 to Take Discovery, Pursuant to the Federal Rules of Civil Procedure, of Respondent Thales Avionics, Inc., for Use in Foreign Proceedings | Case No. PROPOSED ORDER GRANTING LUFTHANSA'S APPLICATION FOR DISCOVERY IN AID OF FOREIGN LITIGATION PURSUANT TO SECTION 1782 |
|---|---|

Having considered Lufthansa's application, any opposition, and argument by the parties, this Court hereby:

1. **GRANTS** Lufthansa's Application for Discovery in Aid of Foreign Litigation Pursuant to 28 U.S.C. § 1782; and

2. **AUTHORIZES** Lufthansa to serve a subpoena on Thales Avionics, Inc., in the form attached to its Application.

Entered this _____ day of _____, 2022.


_____

United States District Court Judge